REICH v. COCHRAN et al.

(Supreme Court, Appellate Division, First Department.  June 15, 1906.)

1. LANDLORD AND TENANT—WRIT OF DISPOSSESSION—RIGHTS OF LANDLORD.
     A writ to dispossess a tenant gives the landlord no right to exercise dominion over, or to use and retain, the tenant's personalty on the premises.
     [Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, § 1325.]

2. TROVER AND CONVERSION—COMPLAINT—EVIDENCE—ADMISSIBILITY.
     Where, in an action against a landlord for the conversion of the tenant's personalty, the complaint alleged that the conversion occurred on the day the tenant was dispossessed, and the proof showed that on that day the landlord employed the steward of the premises in the employ of the tenant, and instructed him not to allow the tenant to take anything away, evidence that on the following day the landlord informed the steward that he was in charge of the goods on the premises, and refused the tenant's request to take away the goods, was admissible.

3. SAME—QUESTION FOR JURY.
     Evidence in an action against a landlord for the conversion of his tenant's chattels on dispossessing the tenant examined, and held to require the submission of the case to the jury.
     [Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trover and Conversion, §§ 288–294.]

4. NEW TRIAL—VERDICT CONTRARY TO EVIDENCE—AUTHORITY OF COURT.
     Evidence in an action for conversion examined, and held not to so preponderate in favor of defendant as to justify the trial court in setting aside a verdict for plaintiff as against the weight of the evidence.
     [Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 146–148.]

Appeal from Trial Term, New York County.

Action by Elizabeth Reich against Eva S. Cochran and others, executors and trustees of the will of William F. Cochran, deceased. From an order setting aside a verdict in favor of plaintiff and granting a new trial, she appeals. Reversed, and verdict reinstated.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and HOUGHTON, JJ.

Alton B. Parker and M. E. Harby, for appellant.
Percy H. Stewart, for respondents.

HOUGHTON, J.   Plaintiff's assignor, Lorenz Reich, was a tenant of the Cambridge Hotel, owned by defendants' testator.  Summary proceedings had been instituted by the owner, and they resulted in a writ of dispossession, which was executed March 17, 1893.   At the time the tenant was thus dispossessed, he had on hand in the storeroom of the hotel a quantity of hotel supplies, including wines and liquors.  It is claim-

ed that the defendants' testator on the day of the dispossession appropriated to his own use and converted this personal property, of the conceded value, with interest, of $8,216. The tenant and owner assigned his claim to this plaintiff, who brought action, which resulted in a verdict by the jury in her favor. On defendants' motion the trial court set aside this verdict as against the weight of evidence and as contrary to law, and granted a new trial. The plaintiff appeals from the order thus made, and insists that the verdict was not contrary to law, and that the weight of evidence was wholly in her favor, and that therefore the order was not justified.

We do not think the verdict was contrary to the law. Upon the plaintiff's proofs, there was exercised on the 17th of March, 1893, by the defendants' testator, the right of ownership and assumption of ownership, and an exclusion of dominion and control by the owner sufficient to constitute conversion of the property in question. The right to take possession under the writ to dispossess the tenant related, of course, only to the real property, and gave the owner no right to exercise dominion over it, or to use or retain the personal property on the premises belonging to the tenant.

According to the plaintiff's proof, the defendants' testator on the day of dispossession summoned the steward of the hotel, in the employ of the tenant, and employed him to continue in that capacity, and instructed him not to allow the tenant to go to the storerooms, or to any of the departments of the hotel, or to take anything away. While the trial court held the plaintiff strictly to her allegation that the conversion took place on the 17th day of March, he permitted, and we think properly, as reflecting upon what the defendants' testator meant by his direction given on the 17th, to be given in evidence a conversation had with the steward on the following day, in which the deceased reminded him that he was in charge of all goods in the hotel, and that he was to make use of them, as usual, for guests, and again refused the tenant's request to be permitted to take the goods away.

Conversion is defined to be "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition, or the exclusion of the owner's rights." Industrial & General Trust Co. v. Tod, 170 N. Y. 233, 245, 63 N. E. 285. The plaintiff's proof came within all the elements of this definition, and she made, therefore, a case proper for a jury to determine. The goods in question were not abandoned by the tenant. They were not fixtures which belonged to the tenant, and which he failed to remove. The doctrine of abandonment applies only to fixtures. Lewis v. O. N. & P. Co., 125 N. Y. 341, 351, 26 N. E. 301. As to ordinary chattels left upon the premises on removal or after eviction, it is the duty of the landlord to notify the tenant to remove them, and, in case he does not, to himself cause their removal. Roberts v. Kain, 6 Rob. 354.

It remains to be considered whether or not the order was justified, because the verdict was against the weight of evidence. The plaintiff was necessarily restricted in her proof, for she could not testify against the deceased, nor could her assignor, although both were shown to have

had interviews respecting the property with the testator. She was, therefore, compelled to rely in order to prove her case upon the testimony of the steward, Howes. In addition to the facts which have been enumerated, he testified that he remained in the employ of the testator as steward, disbursing the goods from the steward's department of the hotel to guests, for five days, until the new tenant, Mr. Walter, took possession, and that the testator paid him for his services for that period of time; that the testator directed him to serve lunch to the guests of the hotel on the 17th, and that certain of the goods belonging to the tenant were used for that purpose. Nothing appears upon the record discrediting this witness. He had been steward for several years of the plaintiff's assignor, and for many years had acted in that capacity for some of the principal hotels of the city of New York, and he made a list of the goods on hand the evening of the 16th of March, with their prices, which the defendants accepted as correct.

From the nature of the case, and as almost always transpires when the active participant in a transaction is dead, the defendants were restricted in their proof, and were compelled to rely upon proof of minor incidents, tending to show that what was claimed to have occurred could not have transpired. To do this they proved that the testator was at the Holland House, and did not, to the knowledge of the witness, come to the Cambridge Hotel until late in the afternoon of March 17th, and hence asked it to be inferred that he could not have had the conversation with Howes to which he testified, nor could he have directed him to serve lunch to the guests of the hotel on that day. In addition, that the tenant was not actually dispossessed until about 4 o'clock in the afternoon, and that the tenant himself asked permission of the testator's representative, who was looking after the dispossession, to serve lunch to the guests of the hotel on that day, and that he did so, and that such representative repeatedly told the tenant to remove all the goods which belonged to him; and that upon the following day there was delivered to the tenant, in behalf of the testator, a written demand that he remove his goods from the premises at once, in default of which they would be removed by the owner of the building and placed on storage. The tenant dealt in wines, and had on hand large casks of wine, difficult of removal, which were stored in a different place on the premises from the goods in question. The testimony discloses that the immediate removal of these goods was a subject of discussion, and that they were not in fact removed until about 10 days later; and it is claimed that this written notice related to goods of this character, and not to the goods in controversy, and it would seem that such was the fact.

The plaintiff's assignor was sworn as a witness, and he did not deny, as he might have done, that he himself served the lunch to the guests of the hotel on March 17th. The defendants proved besides that the lease to the new tenant, Walter, was drawn on the 18th of March at the hotel, and the draftsman, although not knowing positively, assumed by his testimony that Walter went into immediate possession. Walter was not called as a witness, and the record does not disclose that he was dead or beyond the jurisdiction of the court. His testimony, if it could be obtained, would have been of great importance to the de-

fendants, if it would have shown that the testator did not run the hotel the five days which Howes testified he did, and thus that during that period he did not use the supplies which were on hand belonging to plaintiff's assignor at the time of the eviction. In the absence of any explanation, it must be assumed that Walter's testimony would not have been favorable to the defendants in this respect, else he would have been called as a witness, or his absence accounted for.

We have enumerated all the material facts developed by each party, and we do not think the evidence so preponderated in defendants' favor as to justify the trial court in setting the verdict aside as against the weight of evidence. In so concluding, we are not unmindful of the heed which should be given, and which it is the practice of this court to give, in motions of this character to the views of the trial judge, who has had opportunity to see the witnesses upon the stand as they testified, and to observe their candor or lack of candor in giving their testimony.

The motion for a new trial was made upon all the grounds enumerated in section 999 of the Code of Civil Procedure. In passing upon the motion, however, the court expressed grave doubts as to the propriety of his having submitted the case to the jury as matter of law. In our view it was entirely proper so to do. Had the trial court been of this opinion, he doubtless would have denied the defendants' motion. The question is not whether the witnesses upon the one side or upon the other told the truth, but rather one of how much proof each side was able to produce upon the vital question involved. Judging the case by this standard, we think the proof preponderated in plaintiff's favor, and therefore that the order granting a new trial should be reversed, and the verdict reinstated, with costs to the appellant. All concur.