In the Matter of the Estate of CHARLES J. TAGLIABUE, Deceased.

Surrogate's Court, Suffolk County, June 30, 1924.

Principal and surety — release — extension of time of payment and surrender of collateral security obtained by fraud of original debtor does not release surety — novation not effected in absence of consent — not necessary for claimant against estate of surety to commence action to rescind or give notice of rescission — claim allowed, with interest.

A surety for the payment of a bond is not released where the mortgagor, the principal debtor, through fraud and without consideration, procured agreements from the mortgagee extending the time of payments and where, in the absence of negligence by the mortgagee, the mortgagor, through fraud and forgery of the surety's name upon a new surety agreement, induces such mortgagee to surrender and cancel the original bond and mortgage and take in exchange therefor a new bond of the debtor and a mortgage upon other property.

Nor is there a novation where the transaction has been brought about by fraud and deceit, and without consent, since there is no valid new contract, and hence the surety will not be released thereby.

The mortgagee, upon a reconsideration of his claim against the surety's estate for the amount of his investment, is entitled to his claim, with interest, since he was

not guilty of any negligence in releasing his lien.  It is not necessary for him to bring an action to rescind the fraudulent transaction in order to reinstate the liability of his surety upon the original surety agreement.

No notice of rescission is necessary where the mortgagee has elected to treat the fraudulent transactions as void.

APPLICATION for reargument and rehearing of claim against estate.

*Black, Varian & Simon (Alfred W. Varian* and *Herbert M. Simon,* of counsel), for the claimant.

*Niles & Johnson (Henry B. Johnson* and *Ralph Q. Kelly,* of counsel), for the executors.

PELLETREAU, S.   Heretofore Henry Scudder Black presented a claim against the estate of Charles J. Tagliabue for $5,000 and interest from September 3, 1922.  The claim was disputed, and upon the hearing thereon the court held that the signature of Charles J. Tagliabue, deceased, to the collateral bond of September 3, 1919, and the agreement therewith were forged, and dismissed the claim as not being binding upon said estate.  Application has been made to reargue and for a rehearing, Mr. Black claiming that even though the signatures be forgeries the estate is now liable nevertheless.

On November 8, 1912, the claimant, through H. J. Hapgood, son-in-law of Charles J. Tagliabue, invested $5,000 in a bond and mortgage of Mountain Lakes, Inc., on house 99, standing upon lots 24 and 26, in block S, on a map of Mountain Lakes, Inc., with a collateral bond of Oak Ridge Company, the said Hapgood and Charles J. Tagliabue, the decedent, conditioned for the payment of the principal and interest of the bond.  This was a legitimate transaction, and the signature of Charles J. Tagliabue was actually made by him.  Said house and lot were sold or contracted to be sold to one Jones.  The obligation was extended October 18, 1915, and a similar collateral bond.  On November 27, 1918, the obligation was again extended with a similar collateral bond.  Less than a year thereafter the said Hapgood represented to Black that Mountain Lakes, Inc., was the owner of house No. 330 on lots 56 and 58, block G2, of a map of Mountain Lakes; that it was worth $12,000, and that Jones was unable to complete his purchase of the premises covered by the mortgage which Black already held, and requested Black to transfer his $5,000 mortgage to house No. 330, aforesaid, with a similar collateral bond executed by Oak Ridge Company, Hapgood and Tagliabue.  Black was also shown a survey and title company's report.  He, in good faith, accepted the exchange, and on September 3, 1919, did take a mortgage of $5,000 on said substituted security with a collateral bond and

surrendered the bond of 1912 and the mortgage on house No. 99, located on lots 24 and 26. Black did not know it, but there was no house on lots 24 and 26. In my opinion, the collateral bonds of 1915, 1918 and 1919 were forgeries so far as the original signature of Charles J. Tagliabue was concerned and that is, apparently, now conceded.

The history of the entire transaction on both sides has been gone into from the beginning.

I think the whole question turns upon the point of whether Charles J. Tagliabue and his estate have been released from the obligation of the collateral bond signed by him in 1912.

The deceased, Mr. Tagliabue, was a man of good reputation and large means. He did not take a very active interest in the Mountain Lakes, Inc., and other subsidiary companies operating therewith, though he was the financial backer to some extent of all of them and also an officer. Hapgood, the son-in-law, was the active man. I believe that Hapgood committed the forgeries and deceived Black as to the security. He, Hapgood, has departed for parts unknown. Upon going over the whole matter I have come to the conclusion that the extension agreements were without consideration and obtained by the fraud of Hapgood. The cancellation of the mortgage on house No. 99 was likewise obtained by fraud. The creditor, Black, took all the precautions that a man of prudence would take. I cannot see that he was guilty of laches or waived any rights. The effect of this, therefore, in my opinion, is that Mr. Tagliabue was never released from his original obligation.

At first I thought there was a novation. I have changed my mind; I do not think there was. The requisites are: A previous valid obligation; agreement of all parties to the new contract; extinguishment of the old contract, and a valid new contract. The transaction of 1919 was brought about by fraud, and Mr. Black's consent was obtained by fraud and deceit. Therefore, there was no consent. To hold to the contrary is neither good law nor morals. The transaction of 1919 did not release Mr. Tagliabue as surety.

The lots upon which the new mortgage was taken contained no house. When the aforesaid transaction of 1919 was entered into it was represented to Mr. Black that there was a house thereon and that the premises were worth $12,000.

So far as Hapgood is concerned the transaction of 1919 was even more fraudulent than the extensions made in 1915 and 1918.

It is true, so far as the record discloses, that Black has not brought action to rescind the transaction of 1919. I am inclined

to think that he was not compelled to do so. Mr. Black has presented to the court all the facts in the case from the beginning to the end upon the issue of forgery raised in the objections to the allowance of the claim. It does not strike me as equitable that a necessity exists to institute action to rescind a fraudulent transaction procured by the debtor in order to reinstate the liability of the surety upon a prior obligation. The mortgage was canceled of record in 1919. I doubt if Black could get the mortgage reinstated, because of intervening rights of innocent purchasers. Furthermore, Mountain Lakes, Inc., was a foreign corporation and went into the hands of receivers.

No wrongdoing is charged to Mr. Tagliabue. On the other hand, Mr. Black is an innocent party. I think a duty rested upon Mr. Tagliabue as a surety on the collateral bond of 1912 to see that the obligation was paid and honestly canceled. His trust in Hapgood and easy-going ways apparently enabled Hapgood and Mountain Lakes, Inc., which was managed by Hapgood, to satisfy the mortgage lien on house No. 99.

Black was not guilty of any negligence in releasing the lien. I do not think a suit for rescission was necessary. Black elected to rescind by this proceeding, if there actually existed the fraud claimed by the executors, to wit, the forgery of Mr. Tagliabue's name on the collateral bonds. Having elected to treat the fraudulent transactions as void, they become void. No notice of election is necessary.

In *Wolf* v. *National City Bank*, 170 App. Div. 565, 570, the court says: " Plaintiffs claim, however, that the attempted rescission was not complete and effective because notice thereof was not given at once to plaintiffs. We are cited to no case, however, holding that such notice is necessary in a case like the present where there is nothing to be returned to the party against whom the rescission is claimed. The effect of such rescission where the contract was merely one extending a term of credit for a sum of money, is to cancel the credit, whereupon the debt becomes instantly due. The creditor is not bound to give any notice of the rescission, but may wait, as the defendant apparently did, until a demand is made upon him and then assert his right to a set-off."

Upon a reconsideration of the entire matter I am of the opinion that the claim of Henry Scudder Black against the estate of Charles J. Tagliabue for $5,000, with interest from September 3, 1922, is a valid and legal claim and should be allowed and paid.

Decreed accordingly.