WILSON J. TAGGART, Plaintiff, *v.* AUGUSTUS GRABY, Defendant.

County Court, Delaware County, March 10, 1936.

*Edwin A. Mackey* [*George L. Bockes* of counsel], for the plaintiff.

*Charles N. Peake* [*Arthur F. Curtis* of counsel] for the defendant.

O'CONNOR, J.   This action was originally brought by the plaintiff, Wilson J. Taggart, in Justice's Court in the town of Franklin against the defendant, Augustus Graby, and resulted in a verdict in favor of the plaintiff and against the defendant for the sum of $150.   The defendant appealed to this court for a new trial, which was had, and also resulted in a verdict of $150 for the plaintiff. The defendant now moves to set the verdict aside under section 549 of the Civil Practice Act and also because the verdict is excessive.

Crystal Schloss, prior to her marriage to the defendant, was the owner of a house and lot at Beerston, Delaware county, N. Y. Some time prior to August 1, 1931, she had leased this house to James Taggart, the father of the plaintiff.   On or about August 1, 1931, she leased the house to plaintiff.   The plaintiff and his wife continued to occupy the premises until about October 1, 1932, when they separated.   The household goods of the plaintiff remained in the house until about March 4, 1933, when they were removed and placed in a garage owned by the defendant.   Some time prior to March 1, 1933, the defendant married Crystal Schloss, and she will be hereafter referred to as Mrs. Graby.   About June 9, 1933, Mr. and Mrs. Roy Brooks rented another house from defendant.   They testified that they told defendant they wanted some household goods with which to furnish that house; that defendant showed them plaintiff's household goods and told them that the goods belonged to the plaintiff, but that the plaintiff could not have them until plaintiff paid defendant what plaintiff owed; that at that time the personal property of the plaintiff was strewn about the floor of the garage and some of the furniture was in bad condition on account of dampness.   There was also some evidence that the defendant himself used some of the plaintiff's household goods.

There was considerable dispute as to whether or not the plaintiff occupied the premises he had rented from Mrs. Graby from September, 1932, until March, 1933.   The plaintiff testified that he continued to live in the house on the premises until February 23, 1933; that on that date he locked the house up, took the key with him and went to Connecticut to find work; that in March, 1933, he wrote a letter to his friend, Jesse Beers, and asked him to take the furniture out of the house and put it in storage.   Beers testified he went down shortly after he received plaintiff's letter to move the furniture out of the house and it was all gone.   Subsequently, plaintiff asked defendant for his goods, and defendant told plaintiff

to see his wife; they went to see Mrs. Graby, and their conference ended in a quarrel without defendant or his wife offering to return to plaintiff his goods.

The testimony of the defendant and his witnesses was to the effect that the plaintiff left shortly after he and his wife separated about October 1, 1932, and that he did not inform defendant, and defendant did not know, of his whereabouts until about June, 1935. It is undisputed that neither the defendant nor Mrs. Graby returned or offered to return the goods to the plaintiff.

On July 1, 1935, the plaintiff commenced an action against the defendant before Earl St. John, a justice of the peace of the town of Walton. In that action plaintiff sought to recover for the household goods which he claimed the defendant had wrongfully taken and also for his services rendered in painting a barn of the defendant. On August twenty-first the trial was commenced, and after the plaintiff had put in his testimony, the parties entered into an agreement which was entered upon the minutes of the justice in the following language:

" At the close of plaintiff's evidence plaintiff and defendant and their respective attorneys entered into the following stipulation and agreement as a settlement of this cause of action:

" *First.* Plaintiff is to pay to the defendant and Crystal Graby $37 and possession of the property listed on check list in the diary of Crystal Graby was to be returned to plaintiff, mutual releases to be signed by the plaintiff and James Taggart, Aug. Graby and Crystal Graby.

" *Second.* The plaintiff and James Taggart are to furnish a bill of sale of the goods in said diary and a joint general release to the defendant and Crystal Graby in return for a general release from said Grabys.

" *Third.* Upon performance of first and second and payment of costs of $2.30 action was to be discontinued."

The justice testified that the word " and " between the words " first " and " second " in the third paragraph of the stipulation should be " or;" also that plaintiff was to pay the costs of two dollars and thirty cents. No further entry was made upon the justice's docket, and he testified that the action was dropped or settled.

The defendant introduced in evidence releases which he claims were executed by himself and Mrs. Graby on August 21, 1933. There is no evidence that the releases were tendered to the plaintiff or filed with the justice. Defendant's counsel claimed that when the releases were executed the defendant had complied with the terms of the stipulation.

Mrs. Graby was present when the stipulation was made, but James Taggart, plaintiff's father, was not. The plaintiff testified that the stipulation was entered into upon the express condition that his father, James Taggart, would consent thereto and would execute a bill of sale or releases specified therein. The justice also testified that the stipulation was conditioned upon James Taggart's co-operation. There is no evidence that James Taggart ever agreed to the proposed settlement or to execute the papers as stated in the stipulation to be executed by him.

Defendant contends that the court erred in not allowing the witnesses to testify that a warrant had been issued in October, 1932, by Justice P. B. Williams of Walton, N. Y., for the arrest of the plaintiff as tending to show that he had abandoned the premises. This evidence was properly rejected by the court on the ground that the record was the best evidence. The defendant claims that he was seeking to establish that plaintiff knew of the issuance of this warrant and had either left the country or was keeping himself concealed for the purpose of avoiding arrest, and, therefore, was not occupying the premises. That a warrant had been issued for plaintiff's arrest was not admissible on that issue. It is evident that defendant was seeking to introduce the warrant in evidence more for the purpose of discrediting the plaintiff and his evidence than to prove the plaintiff had abandoned the premises.

The defendant then urges that the court erred in charging the jury in relation to the question as to whether the plaintiff abandoned the premises and furniture. Defendant's counsel requested that the court instruct the jury that if the plaintiff, prior to the time his goods were removed from the house, had voluntarily abandoned the premises and abandoned his relation as tenant to those premises, then the owner, or any one acting in her behalf, had the right to re-enter the premises, and, also, that if plaintiff had time to remove his goods and voluntarily abandoned them with no intention of resuming the use of them, then the defendant had a right to remove them from his property. The court refused to charge as requested, but instructed the jury that the owner, or any one acting in her behalf, might have the right to re-enter the premises if they had been abandoned by the plaintiff, but did not have the right to remove the goods without due process of law, to which defendant's counsel excepted.

Mrs. Graby should have instituted summary proceedings and legally dispossessed the plaintiff. She could have instituted these proceedings even though she could not obtain personal service of the notice and process upon the plaintiff. (Civ. Prac. Act, § 1421.) Without summary proceedings she had no right to remove plaintiff's

personal property from the premises. (*Smith* v. *Hart*, 34 Misc. 214, 215.) Even if the relationship of landlord and tenant had terminated, Mrs. Graby had no right to withhold possession of plaintiff's furniture. (*Moore* v. *Lynch*, 130 Misc. 385.) She had no lien upon the furniture for rent or for storage and could not retain possession of the same on account thereof. (*Schaefer* v. *Empire Lithographing Co.*, 28 App. Div. 469; *Moore* v. *Lynch, supra; Beale Furniture Co.* v. *McGrorty*, 53 Misc. 643.)

In order to create an abandonment or a surrender of leased premises by operation of law, the parties must do some act so inconsistent with the relation of landlord and tenant as to indicate that both have agreed to consider the surrender as made. (*Levitt* v. *Zindler*, 136 App. Div. 695.) No such situation existed here. Both parties by their acts indicated that the relation of landlord and tenant, up until the removal of the plaintiff's goods by the defendant or his wife, still existed. Plaintiff claimed that he continued to occupy the premises in person until February 23, 1933, and that then he locked the door and kept the key. Mrs. Graby, on the trial of the action before the justice at Walton in August, 1933, claimed she was entitled to rent up until the time plaintiff's household goods were removed from the premises. Therefore, there was no act so inconsistent with the relation of landlord and tenant as to indicate that the plaintiff and Mrs. Graby had agreed to consider that the plaintiff had surrendered the premises.

Furthermore, the doctrine of abandonment applies only to fixtures and not to household goods and other personal property. (*Reich* v. *Cochran*, 114 App. Div. 141, at p. 143.) The request of defendant's counsel was, therefore, properly denied, and the jury were properly instructed by the court on the question of abandonment.

Defendant also contends that there was not sufficient evidence to establish that defendant converted the plaintiff's property. The evidence on the part of the defendant was that the goods were removed by the defendant's sons in a truck owned by the defendant under instructions from the defendant's wife, and that defendant took no part in removing the same. There is some evidence on the part of the plaintiff that defendant was present at the time the goods were removed. Mr. and Mrs. Brooks testified that at the time they rented the house from defendant they also rented a portion of plaintiff's goods; that defendant stated he had the plaintiff's goods in his possession and would not let plaintiff have them until he paid what he owed, and that defendant used some of plaintiff's goods for his own purpose. Defendant thereby assumed and exercised such a right of ownership of the plaintiff's goods as to

constitute conversion. Even if he were acting as agent for his wife, that would not relieve him from liability.

In *Suzuki* v. *Small* (214 App. Div. 541, 542) it is held: " It is immaterial that the defendant was acting as agent and did not intend to convert plaintiff's property or did not actually have it in its possession, for intent is not an element of conversion, and it is sufficient to constitute conversion if dominion is exercised over the property converted." At best it was a question of fact for the jury. The jury found in favor of plaintiff and there is sufficient evidence to sustain their verdict.

Defendant also contends that the court erred in excluding what was said by the attorneys for the respective parties at the time the stipulation was made on the trial before Justice St. John at Walton. If any error was committed by the court in excluding this evidence, it is harmless, as other witnesses testified fully as to all the terms and conditions of the stipulation and what was intended to be included therein. Neither on the trial nor in his brief does defendant indicate what was said by the attorneys on that occasion that would in any wise affect the matter at issue. He, therefore, is not in any wise prejudiced by the ruling of the court.

Defendant also urges that the stipulation entered into on the trial of the Justice Court action before Justice of the Peace St. John at Walton on August 21, 1935, is a bar to the present action. The plaintiff in that action sought to recover the value of the goods in question and also forty dollars for work which he had performed for the defendant. After the plaintiff and his witnesses had been sworn, the stipulation above set forth was made. It appears that this stipulation contained an agreement to settle not only the claim of the plaintiff against the defendant for the value of his goods and for his services, but also claims of the defendant's wife for rent of her house against both plaintiff and his father, James Taggart, and also for storage of the goods in question against plaintiff. The plaintiff claims that this stipulation was made upon condition that he could obtain the consent of his father, James Taggart, thereto, and the execution by his father of the bill of sale and the general releases to defendant and his wife. In this he was corroborated in effect by Mr. St. John, the justice. If this stipulation was made upon that condition, it is not a bar. (*Wilhelm* v. *Wood*, 151 App. Div. 42.) But even if the stipulation was not made conditional upon plaintiff obtaining his father's consent thereto, James Taggart is named as, and was, a necessary party to the stipulation. There is no claim that he ever consented to become a party to the stipulation or that he ever agreed to its terms. His execution and delivery of the general release to the defendant and his wife or his execution

and delivery of the bill of sale of the household furniture, or whatever interest he had in it, to the defendant and his wife was a material part of the stipulation. The rent Mrs. Graby claimed James Taggart owed her was a part of the consideration for the stipulation. Evidently the defendant and his wife would not accept the stipulation nor consent to a settlement of the action without James Taggart becoming a party to the agreement and performance by him of his part thereof. The requisites of a novation are a previous valid obligation, agreement of all parties to the new contract, extinguishment of the old contract, and a valid new contract. (*Rogers* v. *Thomson*, 215 App. Div. 541; *Inman* v. *Burt Co.*, 124 id. 73; affd., 195 N. Y. 558; *Matter of Tagliabue*, 123 Misc. 666.) Had James Taggart become a party to the agreement and consented thereto, it would have been a bar to this action. (*Moers* v. *Moers*, 229 N. Y. 294; *Katz* v. *Bernstein*, 236 App. Div. 456; *Ostrander* v. *Ostrander*, 199 id. 437.) Not having done so, the stipulation is not a bar.

Defendant also contends that the court erred in its charge to the jury on the question of damages. The court charged: " Wearing apparel in use and household goods and effects owned and kept for personal use are articles which cannot in any fair sense be said to be marketable or have a market value. Their value is indicated by their real value to the owner and of his loss by being deprived of them, and hence, where such articles are converted, the amount of recovery ought not to be restricted to the price which could be realized in the market but plaintiff should be allowed to recover the value to him based on his actual money loss, or the circumstances and conditions resulting from his being deprived of the property, not including however any sentimental or fanciful value. In other words, if you find plaintiff is entitled to recover in this action you are not necessarily limited to what the fair market value of the household goods, wearing apparel and papers was as between a willing buyer and a willing seller but you have a right to take into consideration what the value was to the plaintiff. You have heard the testimony in relation to that matter and you are to exercise your own good judgment if you come to the point where you consider the question of damages." The charge of the court on the question of damages was proper. (*Lake* v. *Dye*, 232 N. Y. 209.)

The evidence was very conflicting on the question of quantity and value of the property plaintiff claims the defendant converted. Quite a number of the articles of furniture plaintiff had purchased secondhand. Defendant's evidence established that some of the articles which plaintiff claimed defendant had converted had been

sold or given away by plaintiff before plaintiff's goods were removed from the house; also that the value placed by plaintiff on some of the articles was excessive. Plaintiff admitted he had sold or given away some of his furniture prior to the time he left the premises on February 23, 1933, but stated that he had not included them in the list of articles which he claimed defendant had converted.

After a careful consideration of all the evidence on this question, we are convinced that the amount of damages awarded to the plaintiff was excessive, and that the value of the household goods to the plaintiff at the time of their conversion by the defendant was seventy-five dollars. In doing this, we are not unmindful of the fact that two juries have found the value of the plaintiff's furniture to be $150.

The motion of the defendant for a new trial is granted unless the plaintiff consents to a reduction of the verdict to seventy-five dollars, in which event the motion for new trial is denied. An order may be entered accordingly.