# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Lutkauskas v. Ricker*, 2013 IL App (1st) 121112

| | |
|---|---|
| Appellate Court Caption | ANTHONY LUTKAUSKAS, TAXPAYER FOR AND ON BEHALF OF LEMONT-BROMBEREK COMBINED SCHOOL DISTRICT 113A, Plaintiff-Appellant, v. DR. TIMOTHY RICKER, ROBERT BECKWITH, JOHN WOOD, DR. MARY GRICUS, LISA WRIGHT, KEVIN DOHERTY, DAVID LEAHY, GWEN O'MALLEY, SUE MURPHY, AL ALBRECHT, UNDERWRITERS AT LLOYD'S, LONDON, KNUTTE ASSOCIATES P.C. AND OTHER PERSONS WHOSE NAMES ARE NOT YET KNOWN, Defendants-Appellees.–LAURA REIGLE, DUANE BRADLEY, LOUIS EMERY, AND JANET HUGHES, TAXPAYERS FOR AND ON BEHALF OF LEMONT BROMBEREK COMBINED SCHOOL DISTRICT 113A, Plaintiffs-Appellants, v. DR. TIMOTHY RICKER, ROBERT BECKWITH, JOHN WOOD, DR. MARY GRICUS, LISA WRIGHT, KEVIN DOHERTY, DAVID LEAHY, GWEN O'MALLEY, SUE MURPHY, AL ALBRECHT, UNDERWRITERS AT LLOYD'S, LONDON, KNUTTE ASSOCIATES P.C. AND OTHER PERSONS WHOSE NAMES ARE NOT YET KNOWN, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-1112 |
| Filed | September 30, 2013 |
| Rehearing denied | November 18, 2013 |

**Held**

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

The trial court's dismissal of a complaint against two employees of a school district and seven members of the school board alleging that section 20-5 of the School Code was violated when money from the district's working cash fund was spent without a school board resolution approving the transfer of funds from the working cash fund was affirmed, since plaintiffs failed to allege that the money was spent for anything other than legitimate school expenses, and in the absence of such allegations, plaintiffs did not have standing under section 20-5 to recover, on behalf of the district, money transferred without a board resolution.

**Decision Under Review**

Appeal from the Circuit Court of Cook County, Nos. 11-CH-35191, 10-CH-53428, 10-CH-53429; the Hon. LeRoy K. Martin, Jr., Judge, presiding.

**Judgment**

Affirmed.

**Counsel on Appeal**

Natalie Brouwer Potts, of Center for Open Government, Law Offices of IIT Chicago-Kent College of Law, and Clinton A. Krislov, of Krislov & Associates, Ltd., of Chicago, for appellants.

Raymond J. Jast and Kimberly E. Blair, both of Wilson, Elser, Moskowitz, Edelman & Dicker LLP, of Chicago, for appellee Certain Underwriters at Lloyd's London.

Thomas F. Falkenberg, Alyssa M. Reiter, and Kirstin B. Ives, all of Williams Montgomery & John Ltd., of Chicago, for appellee Knutte & Associates, P.C.

Edward M. Kay, Paige M. Neel, and Mark J. Sobczak, all of Clausen Miller P.C., for appellee Timothy Ricker.

Justino D. Petrarca, Kevin B. Gordon, and James A. Petrungaro, all of Scariano, Himes & Petrarca, Chtrd., of Chicago, for other appellees.

JUSTICE EPSTEIN delivered the judgment of the court, with opinion.
Justice Fitzgerald Smith concurred in the judgment and opinion.
Justice Pucinski dissented, with opinion.


**OPINION**

¶ 1     In this consolidated appeal, five taxpayer plaintiffs, acting on behalf of the Lemont Bromberek Combined School District 113A, seek reversal of the circuit court's dismissal of their claims brought against two school district employees, seven school board members, the district's accounting firm, and the district's surety. Plaintiffs alleged that the district employees and board members violated section 20-5 of the School Code (105 ILCS 5/20-5 (West 2010)) when they engaged in or permitted a pattern of spending money from the district's working cash fund without a school board resolution approving the transfer of funds from the working cash fund. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND
¶ 3                          Article 20 of the School Code
¶ 4     Plaintiffs' complaints center on a violation of article 20 of the School Code, which authorizes certain school districts to create working cash funds. See 105 ILCS 5/20-1 (West 2010). The working cash fund allows a district to "have in its treasury at all time sufficient money to meet demands thereon for expenditures for corporate purposes" before the district receives taxes designated for those purposes. *Id.* In other words, "the purpose of the working cash fund is to provide a reserve upon which school districts may draw in anticipation of tax collections." *In re Application of Walgenbach*, 104 Ill. 2d 121, 125 (1984). To fund the working cash fund, the district "may incur an indebtedness and issue bonds as evidence thereof" (105 ILCS 5/20-2 (West 2010)) or may levy taxes (105 ILCS 5/20-3 (West 2010)). Money from the working cash fund "may be used by the school board for any and all school purposes and may be transferred in whole or in part to the general funds or both of the school district and disbursed therefrom in anticipation of the collection of taxes lawfully levied for any or all purposes." 105 ILCS 5/20-4 (West 2010). When the district receives taxes as anticipated, "the fund shall immediately be reimbursed therefrom until the full amount so transferred has been retransferred to the fund." *Id.* Under Section 20-5 of the School Code, the board must pass a resolution directing the transfer of monies from the working cash fund:

        "Moneys in the working cash fund shall be transferred from the working cash fund to another fund of the district only upon the authority of the school board which shall from time to time by separate resolution direct the school treasurer to make transfers of such sums as may be required for the purposes herein authorized." 105 ILCS 5/20-5 (West 2010).

Section 20-5 sets forth specific information to be contained within the resolution (*e.g.*, "the taxes in anticipation of which [a] transfer is to be made and from which the working cash fund is to be reimbursed"). See *id.*

¶ 5    Section 20-10 allows a school district to abate the working cash fund at any time, by adoption of a resolution, and "direct the transfer at any time of moneys in that fund to any fund or funds of the district most in need of the money." 105 ILCS 5/20-10 (West 2010). Similarly, section 20-8 allows a district to abolish its working cash fund, by adoption of a resolution, and "direct the transfer of any balance in such fund to the educational fund at the close of the then current school year." 105 ILCS 5/20-8 (West 2010).

¶ 6                                Original Taxpayer Complaints

¶ 7    On December 17, 2010, four taxpayer plaintiffs filed two separate, but nearly identical, lawsuits, which were subsequently consolidated into one action. Hughes brought the first complaint and Reigle, Bradley, and Emery brought the second. The lawsuits named as defendants the district superintendent, the district treasurer, and seven school board members (collectively, the district defendants) in their individual capacities.

¶ 8    Plaintiffs alleged that the district defendants violated section 20-5 of the School Code, when they repeatedly transferred (or allowed the transfer of) money from the district's working cash fund without board resolution. Plaintiffs alleged that between 2007 and 2010, the district spent in excess of the amounts allocated to a number of individual funds that provide capital for the district's annual activities. To make up for shortfalls in these funds, the district drew money from the working cash fund. Plaintiffs further alleged that the district defendants never reimbursed the working cash fund, and instead the school board passed resolutions to abate and abolish the working cash fund. On December 2, 2009, members of the board passed a resolution to partially abate the working cash fund in the amount of $4,849,442, leaving a remainder of $643,500. On April 28, 2010, the board approved a resolution to abolish the working cash fund, with the money to be permanently transferred to the education fund.

¶ 9    Plaintiffs sought relief under section 20-6 of the School Code, which provides:

"Any member of the school board of any school district to which this Article is applicable, or any other person holding any office, trust, or employment under such school district who wilfully violates any of the provisions of this Article shall be guilty of a business offense and fined not exceeding $10,000, and shall forfeit his right to his office, trust or employment and shall be removed therefrom. Any such member or other person shall be liable for any sum that may be unlawfully diverted from the working cash fund or otherwise used, to be recovered by such school district or by any taxpayer in the name and for the benefit of such school district in an appropriate civil action; provided that the taxpayer shall file a bond for all costs and be liable for all costs taxed against the school district in such suit, and judgment shall be rendered accordingly. Nothing herein shall bar any other remedies." 105 ILCS 5/20-6 (West 2010).

Under the authority of section 20-6, plaintiffs sought an order declaring the district defendants forfeit their offices and employment with the district, assessing a $10,000

statutory fine against each of the district defendants, and entering judgment against the defendants personally for "an amount sufficient to make [the district] whole and replace the public funds shown by the evidence to have been unlawfully diverted" from the working cash fund.

¶ 10     Along with these claims, plaintiffs brought a single count for "accountant negligence" against the district's former accountant, Knutte and Associates, alleging that Knutte issued clean audit reports, but knew or should have known of the district defendants' transfer of funds in violation of the School Code. Plaintiffs also brought claims against an entity affiliated with Certain Underwriters at Lloyd's London (Underwriters), the surety that bonded the school treasurer. Plaintiffs alleged that the surety was obligated to pay damages caused to the district by the treasurer's "failure to faithfully discharge the duties of his office according to law."

¶ 11     On July 27, 2011, the circuit court struck the claims against the district defendants with leave to replead. Judge Novak ruled that plaintiffs did not have standing to seek criminal penalties prescribed in section 20-6, and as to any civil recovery, the court ruled that the allegations were insufficient to allege a violation of section 20-5. The court dismissed the claims against Knutte with prejudice, finding that plaintiffs did not have standing to bring the claim. Pursuant to Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006), the court ruled that there was no just cause to delay appeal of the claim against Knutte. The surety was apparently not properly named as a defendant, and plaintiffs later voluntarily dismissed their complaints against the improperly named entity.

¶ 12                    The First Amended Consolidated Complaint
                          and the Lutkauskas Complaint

¶ 13     On August 29, 2011, plaintiffs filed a first amended consolidated complaint, again alleging that the district defendants violated article 20 of the School Code, but adding a breach of fiduciary duty claim against the district defendants. Plaintiffs restated their claims against the properly named entity for the surety, Underwriters at Lloyd's. On October 11, 2011, a fifth taxpayer plaintiff, Lutkauskas, filed his complaint, which was later consolidated with the other two taxpayer complaints. The Lutkauskas complaint was identical to the first amended consolidated complaint of the other plaintiffs, but added new claims against Knutte for accounting malpractice, negligence, breach of fiduciary duty, and aiding the district defendants in violating the School Code.

¶ 14     Both the amended consolidated complaint and the Lutkauskas complaint provided additional detail regarding the alleged illegal transfer of funds. Specifically, plaintiffs alleged "[i]t appears that the District monies, though specifically appropriated to specific funds/purposes, were held in a commingled account. Thus, when money was spent beyond the legal appropriation for a particular fund, it actually drained or diverted the Working Cash Fund, without the appropriate Board Action and documentation for such dispersions." The complaint also cited email correspondence among the district defendants purporting to show that they were aware that the working cash funds were being used between 2007 and 2010 without board resolutions approving any transfers.

¶ 15    On March 15, 2012, the district defendants and Underwriters at Lloyd's moved to dismiss plaintiffs' first amended consolidated complaint and the Lutkauskas complaint. Knutte filed a motion to dismiss the Lutkauskas complaint. The trial court granted these motions. While the defendants asserted various bases on which to dismiss the complaints, Judge Martin ruled that plaintiffs' complaint failed to state a claim and the district defendants had legislative immunity. Judge Martin also stated that plaintiffs were "basically arguing a windfall" and that "nothing in the complaint *** would tell the reader that money was used for some purpose other than for school purposes." As a result, the court ruled that Underwriters at Lloyd's had no liability as surety and dismissed the complaints against it. With respect to Knutte, the circuit court dismissed Lutkauskas's claims with prejudice on the basis of *res judicata*. Plaintiffs appealed.

¶ 16                                            ANALYSIS

¶ 17    Defendants moved to dismiss under sections 2-619 and 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2010)). A motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)) challenges the legal sufficiency of the complaint. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). Section 2-619 of the Code of Civil Procedure allows dismissal where, in pertinent part, plaintiff does not have standing to bring an action. 735 ILCS 5/2-619(2) (West 2010).

¶ 18    We review the circuit court's dismissal of plaintiffs' complaints *de novo*. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 266 (2003). This court may affirm the circuit court's dismissal for any reason appearing in the record. See *Gunthorp v. Golan*, 184 Ill. 2d 432, 438 (1998) (the trial court may be affirmed on any basis in the record without regard to whether the trial court relied upon that ground or whether the trial court's rationale was correct); *Geick v. Kay*, 236 Ill. App. 3d 868, 873 (1992) (although the trial court's order did not specify whether the counts were being dismissed under section 2-615 or section 2-619, the reviewing court may affirm a correct decision for any reason appearing in the record, regardless of the basis relied upon by the trial court); *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 47 (appellate court has jurisdiction to consider issue not reached by circuit court on motion to dismiss, where issue was properly raised in the circuit court but court granted motion to dismiss on another basis).

¶ 19    On appeal, defendants raise a host of arguments in support of affirming the district court's dismissal of the taxpayers' complaints. Defendant Timothy Ricker filed a brief on his own behalf, arguing that: (1) plaintiffs are not entitled to any relief because the district did not suffer any monetary damages and any recovery would constitute an unjust windfall; (2) the breach of fiduciary duty claims fail because plaintiffs have not alleged damages; (3) plaintiffs lack standing to seek criminal penalties prescribed in section 20-6; (4) legislative immunity bars any claim against Ricker; (5) plaintiffs failed to plead a cause of action under section 20-6 or for breach of fiduciary duty; (6) claims in the Lutkauskas complaint are time-barred; (7) plaintiffs lack standing to bring the instant case because they never demanded the district bring the action itself; and (8) plaintiffs' complaints were properly dismissed because they fail to name an indispensable party. The remaining district defendants raise many of the

same arguments, but also argue that (1) claims against certain district defendants should be dismissed because none of the allegations in the complaint as to the working cash fund transfers were directed at these individuals; and (2) the claims should be dismissed against the school district defendants in their individual capacities. Defendant Knutte asserts that the trial court properly dismissed all counts against it by Lutkauskas based on the doctrine of *res judicata*. Finally, defendant Underwriters at Lloyd's raises several arguments as to why it has no obligation to pay under the treasurer bond, assuming that any of the allegations against defendant Beckwith are not dismissed for other reasons.

¶ 20                          Claims Against the District Defendants

¶ 21    Among the various arguments raised in support of dismissal by the district defendants, we need only address two narrow issues relating to the remedies sought by the taxpayer plaintiffs against the district defendants.

¶ 22    In their complaints, plaintiffs first ask the court to fine each of the defendants and order their removal from office under the first sentence of section 20-6:

> "Any member of the school board of any school district to which this Article is applicable, or any other person holding any office, trust, or employment under such school district who wilfully violates any of the provisions of this Article shall be guilty of a business offense and fined not exceeding $10,000, and shall forfeit his right to his office, trust or employment and shall be removed therefrom." 105 ILCS 5/20-6 (West 2010).

The district defendants argue that the forfeiture of office and fines prescribed in the first sentence of section 20-6 are penalties only the State of Illinois can impose. In its July 27, 2011 ruling dismissing Reigle's and Hughes' original complaints, the circuit court agreed. Judge Novak held that only an appropriate government actor, not taxpayer plaintiffs, would have standing to pursue these remedies under the statute. The Lutkauskas complaint, which postdated the July 27, 2011 dismissal decision, also sought forfeiture and fines from defendants. In dismissing the Lutkauskas complaint, Judge Martin agreed with Judge Novak's ruling, stating that the School Code "contemplate[s] the State's Attorney or the [Attorney General's] office really being the entity to bring a cause of action and look for penalties or removal from office."

¶ 23    When considering the proper construction of section 20-6, we strive to "ascertain and give effect to the legislature's intent." See, *e.g.*, *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23 (citing *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006)). "The best indication of this intent remains the language of the statute itself, which must be given its plain and ordinary meaning." *Id.* We presume that the legislature did not intend absurdity, inconvenience, or injustice. *Id.*

¶ 24    In this case, we agree with the circuit court that the first sentence of section 20-6 sets forth criminal penalties. The first sentence of section 20-6 speaks to a party "guilty of a business offense." 105 ILCS 5/20-6 (West 2010). The term "business offense" is specifically defined in the Unified Code of Corrections. See 730 ILCS 5/5-1-2 (West 2008) (" 'Business Offense' means a petty offense for which the fine is in excess of $1,000."). Our supreme

court has described the specific penalties imposed in section 20-6 (a "fine" and "forfeit[ure]" of the "right to office") as criminal in nature. See *In re Walgenbach*, 104 Ill. 2d 121, 125 (1984) (stating that section 20-6 "provides for criminal sanctions against any member of a school board who wilfully violates the provisions of article 20"). And we have recognized that the General Assembly may seek to enforce compliance with a statute by specifying that a violation constitutes a "business offense," which we described as a "criminal penalty." See *Parra v. Tarasco, Inc.*, 230 Ill. App. 3d 819, 823 (1992) (noting that Illinois Choke-Saving Methods Act imposed a "criminal penalty," where it provided that anyone violating it "is guilty of a business offense and shall be fined $500" ).

¶ 25        In response, plaintiffs claim that they "are asking for–and entitled to–forfeiture of office by the District 113A Defendants still holding office (not Ricker, who resigned as Superintendent) and monetary penalties, notably that will go to the District, not Plaintiffs." Beyond this mere assertion, however, plaintiffs provide no authority for why they, as private taxpayers acting on behalf of the school district, have the power to impose criminal penalties for what is a criminal violation. Nor do plaintiffs provide any authority for the proposition that statutory penalties for a "business offense" can be awarded as a remedy in a civil action. Accordingly, we agree with the circuit court that plaintiffs did not have standing to seek forfeiture of office or to impose fines in a civil suit.

¶ 26        While the first sentence of section 20-6 speaks to criminal violations, the second sentence of section 20-6 references "an appropriate civil action" brought by the district or "by any taxpayer in the name and for the benefit of such school district." Private taxpayers may bring suit on behalf of the district to recover "any sum that may be unlawfully diverted from the working cash fund or otherwise used." 105 ILCS 5/20-6 (West 2010).

¶ 27        Plaintiffs seek to recover "an amount sufficient to make District 113A whole and replace the public funds shown by the evidence to have been unlawfully diverted from the Working Cash Fund." The complaint alleges that at times between 2007 and 2010, the district drew money out of the working cash fund in order to cover shortfalls in other funds. Later in 2009 the board formally approved the fund's abatement, with all money being transferred to some other funds (the complaint does not specify which funds). In 2010, the board formally approved the fund's abolishment, with the remaining money being transferred to the education fund.

¶ 28        The district defendants argue that there are no allegations that they used the funds at issue "for anything other than legitimate District expenses." According to defendants, allowing the taxpayer plaintiffs to recover from defendants in this circumstance "would result in a windfall to the District by reimbursing it for money it never lost." Judge Martin agreed, stating that plaintiffs were "basically arguing a windfall" and that "nothing in the complaint *** would tell the reader that money was used for some purpose other than for school purposes." Plaintiffs argue that because section 20-5 plainly forbids interfund transfers without board resolution, any money transferred without board resolution should be considered a "sum *** unlawfully diverted from the working cash fund" recoverable by the taxpayer plaintiffs on behalf of the district. 105 ILCS 5/20-6 (West 2010). According to

plaintiffs, defendants are personally liable for $5,492,942.[1]

¶ 29    The parties' dispute about the proper remedy reflects an underlying disagreement about whether the monies at issue were "unlawfully diverted." The School Code does not define "unlawful diversion" or "diversion," and we may consult a dictionary to ascertain the plain and ordinary meaning of those terms. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 60. Moreover, "words and phrases having well-defined meanings in the common law are interpreted to have the same meanings when used in statutes dealing with the same or similar subject matter as that with which they were associated at common law." *Scott v. Dreis & Krump Manufacturing Co.*, 26 Ill. App. 3d 971, 983, 326 N.E.2d 74 (1975); *People v. Bailey*, 375 Ill. App. 3d 1055, 1061 (2007). We look to the common law meaning of terms even in statutes dealing with new or different subject matter, to the extent that they appear fitting and absent evidence indicating a contrary meaning. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 17 (1996).

¶ 30    At the time section 20-6's predecessor statute (1933 Ill. Laws 265) was enacted, Black's Law Dictionary defined "diversion" as "[a] turning aside or altering the natural course of a thing," with the term being "chiefly applied to the unauthorized changing the course of a water course to the prejudice of a lower proprietor, or to unauthorized or illegal use of corporate funds." Black's Law Dictionary 600 (3d ed. 1933). In a line of cases considering interfund loans, our supreme court has repeatedly defined the "diversion" of funds or the "unlawful diversion" of funds as use for some improper purpose or some purpose specifically prohibited by statute. As relevant to the issue here, the court explained, "Municipal officers have no right to divert moneys from one fund to another and different fund for which it was not appropriated. But the word 'divert' is used in the sense of turning such fund permanently from its purpose or the final appropriation of it to some other use." *Gates v. Sweitzer*, 347 Ill. 353, 359 (1932); see also *Michaels v. Barrett*, 355 Ill. 175, 185-86 (1934) (rejecting argument that statute providing for use of part of motor fuel tax to pay interest and principal on emergency relief bonds is an "unlawful diversion" of portion of privilege tax allotted to counties for road purposes, where collected taxes become public money and may be applied to whatever purpose legislature determines).

¶ 31    Building from *Gates* and similar cases, our supreme court has found an improper diversion of funds where funds are used for a different purpose than allowed by statute. In *People ex rel. Brenza v. Gilbert*, 409 Ill. 29 (1951), for example, the court considered a temporary transfer of funds from a working cash fund for corporation purposes to the county highway fund. The court distinguished those cases finding no "diversion" of funds when monies were loaned from one fund to another: "The present case is different from [those cases] in that there is at least an implied prohibition against using the working cash fund for anything except the purpose of financing the corporate fund of the county." *Brenza*, 409 Ill.

---

[1]Plaintiffs actually claim that defendants could be liable for as much as $12 million, but that figure is only used in the complaint with reference to plaintiffs' allegations that Knutte issued improper audits: "The effect of these audits was that the illegal misspending, overspending and illegal transfers described above were concealed, resulting in losses to the district of more than $12 million."

2d at 37. Similarly, in *People ex rel. Redfern v. Penn Central Co.*, 47 Ill. 2d 412 (1971), the court considered whether the transfer from the education to the Illinois municipal retirement fund amounted to "an unlawful diversion of monies from one fund to another." *Redfern*, 47 Ill. 2d at 416. The court found that the transfer did amount to an unlawful diversion, where the statute at issue did not allow for "loans between the educational fund and the Illinois municipal retirement fund." *Id.* at 418.

¶ 32    In accord with these cases considering the "unlawful diversion" of funds, we conclude that the plaintiffs cannot recover a monetary award from the defendants, for they have not alleged that the money transferred from the working cash fund was put toward some improper purpose forbidden by the statute. Plaintiffs do not allege that defendants violated the School Code by spending monies from the working cash fund on something other than legitimate school expenses. See 105 ILCS 5/20-4 (West 2010) ("Moneys in the fund may be used by the school board for any and all school purposes and may be transferred in whole or in part to the general funds or both of the school district and disbursed therefrom in anticipation of the collection of taxes lawfully levied for any or all purposes ***."). Rather, plaintiffs allege that the board did not pass any resolution as to the transfer of funds (at least until the board passed resolutions to abate and then abolish the fund, thereby permanently transferring the working cash funds). We acknowledge that article 20 also contemplates that money is to be *temporarily* loaned for tax anticipation purposes, and the working cash fund is to be reimbursed when those taxes are collected. Plaintiffs alleged that defendants were using working cash funds to cover shortfalls due to deficit spending, without ever reimbursing the working cash fund. But here, the school board effected a permanent transfer of the money by passing resolutions to abate and abolish the working cash fund. While plaintiffs contend that the resolutions to abate and then abolish the working cash fund were simply made to "cover up" earlier transfers, they do not allege that the resolutions were improper. Where plaintiffs do not allege that the funds were spent for an improper purpose, and where the defendants have effected a permanent transfer of working cash funds as allowed by article 20, plaintiffs cannot show any loss to the district as a result of defendants' alleged actions.

¶ 33    Although plaintiffs offer no authority for their proposed interpretation of the statute, they suggest that the legislature must have meant to allow recovery in a civil suit under these circumstances to ensure compliance with the statute. Plaintiffs contend that district officials "could evade any accountability for their illegal conduct regarding the Working Cash Fund by, even after the fact, simply abolishing the fund." Our holding is not so broad. We conclude only that plaintiffs here cannot seek to recover personally from district officials under the civil recovery provision of section 20-6. If defendants did willfully violate section 20-5, a party with standing could seek to impose the serious criminal penalties prescribed in section 20-6. Indeed, the statute provides for criminal penalties for willful violations of "any of the provisions of this Article" and then separately provides for a civil suit to recover funds "unlawfully diverted." As defendants acknowledge, "the statute contains a means to enforce, where appropriate, willful violations of Article 20 where no actual damages result."

¶ 34    Accordingly, we affirm the circuit court's dismissal of plaintiffs' complaints under section 2-619. Under section 20-6, the taxpayer plaintiffs do not have standing to seek the

criminal penalties of forfeiture of office or fines. Section 20-6 also does not authorize a civil suit to recover vast sums of money personally from district defendants for the alleged violation of section 20-5, where there are no allegations that monies from the working cash fund was spent on something other than legitimate school expenses. Without those allegations, plaintiffs do not otherwise have standing to recover, on behalf of the district, money transferred without board resolution, notwithstanding the alleged violation of section 20-5.

¶ 35    Plaintiffs' breach of fiduciary duty count fails for a similar reason. Like the alleged section 20-5 violation, the breach of fiduciary duty claim rests on the district defendants' failure to pass a board resolution to approve the withdrawal of money from the working cash fund. As with the School Code violation, plaintiffs seek to recover "an amount sufficient to make [the district] whole and replace the public funds shown by the evidence to have been unlawfully diverted from the Working Cash Fund." As explained above, however, plaintiffs fail to allege any loss to the district resulting from the district defendants' failure to obtain approval for fund transfers. Plaintiffs have thus failed to allege any damages to support their claim for breach of fiduciary duty. See *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 976 (2010) (To prevail on a claim for breach of fiduciary duty, plaintiff must show the existence of a fiduciary duty, the breach of that duty, and damages proximately caused by the breach.).

¶ 36    Plaintiffs respond that the complaint describes the "deleterious effects of overspending and damages caused to the district." Specifically, plaintiffs point to the complaints' allegations that "spending beyond appropriation in one year produces negative balances in cash accounts, which carry over to the next year. Further expenditures beyond appropriations in the years following dig an even deeper fiscal deceit upon the taxpayers, and others, that keeps growing, until the District simply runs out of cash, as it appears to be nearing." On appeal, however, plaintiffs make clear that there is no cause of action based on this alleged budget deficit spending; according to plaintiffs, those allegations only "provide context" for the causes of action. Moreover, as noted above, plaintiffs specifically seek to recover those funds that have been transferred without board approval. We therefore affirm the circuit court's dismissal of the breach of fiduciary duty claim. As both counts against the district defendants were properly dismissed, we also affirm the district court's dismissal of any claims against Underwriters for Lloyd's.

¶ 37                      Lutkauskas's Claims Against Knutte

¶ 38    The only remaining claims for consideration are Lutkauskas's claims against Knutte. The circuit court dismissed Lutkauskas's claims on the basis of *res judicata*, finding that the final judgment in favor of Knutte in the previous taxpayer suit barred Lutkauskas's claims. On appeal, Lutkauskas challenges this ruling and also argues that "[d]ue process considerations were not given appropriate deference" when the circuit court dismissed his claims against Knutte.

¶ 39    The doctrine of *res judicata* provides that "a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their

privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). "*Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). The doctrine applies if three requirements are met: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) the parties or their privies are identical in both actions; and (3) an identity of cause of action exists. *Id.* A determination of whether a claim is barred under the doctrine of *res judicata* is a question of law, which is subject to *de novo* review. *Arvia v. Madigan*, 209 Ill. 2d 520, 526 (2004).

¶ 40        Lutkauskas and Knutte agree that the first requirement for *res judicata* is met: where the circuit court dismissed plaintiffs' complaints against Knutte with prejudice on July 27, 2011, there was a final judgment on the merits. As to the second requirement, Lutkauskas argues that because "he was not a party in the previous lawsuit and his claims were brought as a separate taxpayer acting in his individual capacity," the parties were not identical or were not in privity.

¶ 41        At the outset, we emphasize that Lutkauskas was not "acting in his individual capacity." Lutkausas's complaint leaves no doubt on that point: the complaint is brought "as a taxpayer derivative action in the name and for the benefit of the School Board District 113A." A "taxpayer derivative action," by contrast, is "brought by a taxpayer on behalf of a local governmental unit to enforce a cause of action belonging to the local governmental unit." *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 494 (2005). The claimed injury in such an action "is not personal to the taxpayers, but rather impacts the governmental entity on whose behalf the action is brought.' [Citation.]" *Id.*

¶ 42        We have rejected these same arguments in *Nelson v. Chicago Park District*, 408 Ill. App. 3d 53 (2011), a taxpayer action.[2] In *Nelson*, three individual Chicago taxpayers and a community organization sued the Latin School, the Chicago Park District, and others, seeking a declaratory judgment as to an agreement between the Chicago Park District and the Latin School regarding funding and construction of a soccer field. The parties settled, and the suit was dismissed with prejudice. Three different taxpayers later filed suit against the same defendants, challenging aspects of the settlement. This court affirmed the dismissal of the suit on the basis of *res judicata*. We held that "[a]lthough the *Latin II* plaintiffs were not parties to the *Latin I* lawsuit, as Chicago taxpayers, they were in privity with the individual *Latin I* plaintiffs, who were also Chicago taxpayers." *Id.* at 61. This court explained that "the relevant inquiry is whether the interests of the *Latin II* plaintiffs were adequately represented in *Latin I*." *Id.* On that question, we concluded that "the interests of the *Latin II* plaintiffs were the same as those represented in *Latin I* because the overriding concern in both cases was an unlawful transfer of public property to a private party." *Id.* at 62.

¶ 43        As in *Nelson*, Lutkauskas and the other taxpayer plaintiffs here were in privity. The

_____

[2]Unlike a taxpayer derivative action, a "taxpayer action" is a suit brought by private persons "*on behalf of themselves* and as representatives of a class of taxpayers similarly situated within a taxing district or area." (Emphasis added and internal quotation marks omitted.) *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 493 (2005).

-12-

plaintiffs represent the same legal interests, even more so than in *Nelson*, where the *Latin II* plaintiffs were challenging the settlement reached in *Latin I* and where plaintiffs were acting as taxpayers acting for themselves and on behalf of a class. In this case, all plaintiffs filed taxpayer actions "in the name and for the benefit of" the district under the authority of section 20-6 of the School Code. Moreover, Lutkauskas and his fellow taxpayers sought recovery from the district defendants on identical grounds, and all their claims against Knutte related to Knutte's complicity in the district defendants' alleged violation of the School Code. We agree with the circuit court that there is an identify of plaintiffs among their taxpayer suits.

¶ 44    As to the third requirement, Lutkauskas somewhat confusingly suggests that it was not met, because he "alleged several new claims against Knutte" and these claims "sufficiently differ from those of the preceding consolidated [c]omplaint." Lutkauskas does not further explain his position or cite any authority. As Knutte points out, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998); *Cooney v. Rossiter*, 2012 IL 113227, ¶ 21. Put another way, "assertions of different kinds or theories of relief arising out of a single group of operative facts constitute but a single cause of action." *Cooney*, 2012 IL 113227, ¶ 22 (quoting *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490-91 (1993)). Here, the factual allegations relating to Knutte in all three complaints are parallel: each suit alleges that Knutte improperly issued clean audit opinions that failed to disclose the district defendants' alleged misappropriations and thereby concealed the district's losses. Lutkauskas offers no argument to the contrary,[3] and we thus conclude that an identity of cause of action exists. As a result, we affirm the court's dismissal of Lutkauskas's claims against Knutte.

¶ 45    Lutkauskas finally argues that his due process rights were violated when the circuit court denied him a fair opportunity to litigate "his own claims." In *Hansberry v. Lee*, 311 U.S. 32 (1940), the United States Supreme Court held that it would violate the due process clause of the fourteenth amendment to bind litigants to a judgment rendered in an earlier litigation to which they were not parties and in which they were not adequately represented. Yet the court has held that states "are generally free to develop their own rules for protecting against the relitigation of common issues or the piecemeal resolution of disputes." *Richards v. Jefferson County*, 517 U.S. 793, 797 (1996). More specifically, in cases "in which the taxpayer is using that status to entitle him to complain about an alleged misuse of public funds," the court reasoned that "the States have wide latitude to establish procedures not only to limit the number of judicial proceedings that may be entertained but also to determine whether to accord a taxpayer any standing at all." *Id.* at 803.

---

[3]In fact, Lutkauskas apparently concedes the third *res judicata* requirement in his reply brief, though his position again is not set forth with clarity. The reply brief states, without further elaboration: "As to the third requirement, Plaintiff Lutkauskas submits that identity of cause of action may be similar with respect to the core operative facts."

¶ 46    Lutkauskas principally relies on three United States Supreme Court cases to support his due process argument. In *Richards v. Jefferson County*, 517 U.S. 793 (1996), three county taxpayers and the director of finance for the city of Birmingham had sued the county challenging the validity of an occupation tax. The tax was upheld in that case (the original suit), and two classes of taxpayers later sought declaratory judgment challenging the constitutionality of the tax. The United States Supreme Court held that the judgment in the original suit did not have *res judicata* effect, reasoning that plaintiffs "did not sue on behalf of a class; their pleadings did not purport to assert any claim against or on behalf of any nonparties; and the judgment they received did not purport to bind any *** taxpayers who were nonparties." *Id.* at 801. The *Richards* Court distinguished the case before it from a case (similar to the one here) where "the taxpayer is using that status to entitle him to complain about an alleged misuse of public funds *** or about other public action that has only an indirect impact on his interest." *Id.* at 803.

¶ 47    In *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160 (1999), the Court confronted similar facts. There, South Central Bell Telephone Company filed a suit challenging an Alabama tax. Prior to South Central Bell's suit, four foreign corporations had challenged the same Alabama tax and lost. The Court held that the earlier judgment against the foreign corporations did not have a *res judicata* effect on the *South Central Bell* suit. Relying on *Richards*, the Court explained that the two relevant cases involved different plaintiffs and different tax years; that neither was a class action; and that no party claimed there was privity or some other special relationship between the two sets of plaintiffs.

¶ 48    In *Taylor v. Sturgell*, 553 U.S. 880 (2008), two individuals, Herrick and Taylor, each brought separate claims under the Freedom of Information Act, seeking the same public records. Addressing a question of federal common law, the Supreme Court rejected the doctrine of preclusion by "virtual representation," holding that the prior judgment against Herrick did not bar Taylor from maintaining his lawsuit because Herrick had not adequately represented Taylor in the prior suit. *Taylor*, 553 U.S. at 885.

¶ 49    While Lutkauskas again characterizes himself as an "individual taxpayer" or an "individual plaintiff" bringing "his own claims," we reiterate that he brought his claims on behalf of the district. That critical fact, repeatedly ignored by Lutkauskas on appeal, renders inapposite the cases he relies on to support his due process argument. Unlike all of those cases, here Lutkauskas and his fellow taxpayers were representing the interests of the district. They sought recovery from the district defendants on the same grounds, and all their claims against Knutte related to Knutte's concealment of the district defendants' alleged violation of the School Code. We find no merit to Lutkauskas's due process argument.

¶ 50                                    CONCLUSION

¶ 51    For the foregoing reasons, we affirm the circuit court's dismissal of plaintiffs' complaints.

¶ 52    Affirmed.

-14-

¶ 53     JUSTICE PUCINSKI's dissent to be filed later.

¶ 54     JUSTICE PUCINSKI, dissenting.*

¶ 55     I respectfully dissent from the decision of the majority. I would reverse and remand with instructions to allow plaintiffs to file amended complaints. This is largely because many of the issues raised in these consolidated cases have so little case law that there is a dearth of direction from any reliable source. More to the point, the trial court should not have granted the section 2-615 and section 2-619 motions to dismiss.

¶ 56     This appeal is the result of various events in three consolidated circuit court of Cook County chancery cases:

> (1) No. 10 CH 53428, a declaratory judgment case filed by Laura Reigle, Duane Bradley and Louis Emery on behalf of Lemont Bromberek Combined School District 113A, plaintiffs, v. Dr. Timothy Ricker *et al.*, defendants;

> (2) No. 10 CH 53429, a declaratory judgment case filed by Janet Hughes on behalf of Lemont Bromberek Combined School District 113A, plaintiff, v. Dr. Timothy Ricker *et al.*, defendants; and

> (3) No. 11 CH 35191, a derivative action filed by Anthony Lutkauskas, taxpayer for and on behalf of Bromberek Combined School District 113A, plaintiff, v. Dr. Timothy Ricker *et al.*, defendants.

¶ 57     These three cases were consolidated in the circuit court and have also been consolidated on appeal; however, the appellate court caption differs slightly.

¶ 58     Plaintiffs are, respectively (at the time the complaints were filed): Laura Reigle, Duane Bradley and Louis Emery, residents of and taxpayers in the school district; Janet Hughes, resident of and taxpayer in the school district; and Anthony Lutkauskas, resident of and taxpayer in the school district.

¶ 59     Defendants consistent to all three cases are, respectively: Dr. Timothy Ricker, a school district employee, serving as superintendent; Robert Beckwith, formerly school treasurer and business manager for the school district; John Wood, formerly president of the board of education of the school district; Dr. Mary Gricus, assistant superintendent of the school district; Lisa Wright, former president and vice president of the school district; Kevin Doherty, former vice president and current member of the school district; David Leahy, former member of the school district; Gwen O'Malley, former secretary of the school district; Sue Murphy, former president and current member of the school district; Al Albrecht, former member of the school district; and Knutte Associates, P.C., and other persons whose names are not yet known.

¶ 60     In the two 2010 chancery cases Lloyd's Illinois, Inc., was a named defendant. In the 2011 chancery case, Lloyd's Illinois, Inc., was dropped as a defendant and Underwriters at Lloyd's London was named instead.

---

*Justice Pucinski's dissent filed October 24, 2013.

¶ 61    The two 2010 cases were consolidated on March 15, 2011, and that consolidated case was consolidated again with the 2011 case on November 14, 2011. All three are consolidated for appeal.

¶ 62    The district defendants' (employees, past employees, present and past school board members and officers) section 2-619 motion to dismiss was granted when the court decided that they enjoyed immunity because their actions were the result of budget making, which is a legislative act and is discretionary. However, the statute in question, section 20-5 of the Illinois School Code, requires a resolution to be passed before any money can be transferred out of the working cash fund. That requirement is mandatory: "Moneys [from] the working cash fund *shall* be transferred from the working cash fund to another fund of the district *only* upon the authority of the school board which *shall* from time to time *by separate resolution* direct the school treasurer to make transfers \*\*\*." (Emphases added.) 105 ILCS 5/20-5 (West 2010). Further, even if the *school board members* had some legislative immunity, it is hard to see how that legislative immunity covered two current or former *employees* of the school district.

¶ 63    The legislative source of the permission to make the transfers at all is very clear, through the use of the mandatory terms: *shall*, *only*, and *by separate resolution*. That language makes the act of *deciding to transfer* the funds discretionary to be sure, but the *way it is to be done* is not discretionary at all; it is mandated or ministerial, which takes it out of the tort immunity argument. " 'Discretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.' " (Emphases omitted.) *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 371-72 (2003) (quoting *Snyder v. Curran Township*, 167 Ill. 2d 466, 474 (1995)).

¶ 64    I agree with plaintiffs that the core actions–or more specifically, inactions–of the district defendants were not budget making because the actions were not in the budget; they were accomplished by shuffling paper. Beckwith never put the transfers on the agenda. Therefore there was no vote. Therefore there was no legislative action. Therefore there is no legislative immunity. Further, since the mystery money was never appropriated in a line item it was not part of the district defendants' budget process but was, instead, part of a pattern of transferring money without authorization.

¶ 65    The district defendants were also granted dismissal on a section 2-615 motion. However, the pleadings clearly show that these defendants' actions did not conform to the legislative requirement for separate resolutions each time a transfer was made, the pleadings contained allegations sufficient to demonstrate this fact, and the pleadings, therefore, state a cause of action which is granted by the Illinois School Code.

> "Any member of the school board of any school district to which this Article is applicable, or any other person holding any office, trust, or employment under such school district who wilfully violates any of the provisions of this Article shall be guilty

-16-

of a business offense and fined not exceeding $10,000, and shall forfeit his right to his office, trust or employment and shall be removed therefrom. Any such member or other person shall be liable for any sum that may be unlawfully diverted from the working cash fund or otherwise used, to be recovered by such school district or by any taxpayer in the name and for the benefit of such school district in an appropriate civil action; provided that the taxpayer shall file a bond for all costs and be liable for all costs taxed against the school district in such suit, and judgment shall be rendered accordingly. Nothing herein shall bar any other remedies." 105 ILCS 5/20-6 (West 2010).

¶ 66    The law itself makes it clear that there is a cause of action and that a taxpayer is a proper person to bring it on behalf of the school district. In these consolidated cases, plaintiff Lutkauskas brought a derivative action on behalf of the school district, and as such, he was not in the same position as the plaintiffs in the first two of the three cases, who were found not to have standing. For this reason, the section 2-615 dismissal of the Lutkauskas case as to the district defendants was error.

¶ 67    Lutkauskas' claims against accountant Knutte were dismissed on the basis of *res judicata*. This presumes that he was in the same position and raised the same claims against Knutte as in the earlier two cases, when in fact Lutkauskas' claims included accountant negligence, breach of fiduciary duty and aiding and abetting (illegal) acts. The pleadings demonstrate that the accounting firm, Knutte, was the accountant for the school board of the school district and it prepared annual financial reports. Those reports indicated that the working cash fund had more than $5.4 million in it for several years when in fact the actual account balance was $0. Either Knutte was incompetent or it was contriving to assist in hiding the actual balance. To let it escape further scrutiny through procedural sleight of hand is exactly what should not happen. Let this case go to full discovery. Let both sides make their case. That is why we have trial courts.

¶ 68    In addition, during the course of the earlier two cases the accounting firm, Knutte, was granted its motion to dismiss with prejudice and, therefore, those plaintiffs were not allowed to amend their complaint as to the accountant. Allowing amended complaints is well within the discretion of the trial court and would have been appropriate.

¶ 69    The complaint against the insurance company was also dismissed. The issue of Lloyd's being Lloyd's Illinois was never fully resolved. It is a "Lloyd's Illinois" stamp on the bond in question, yet Lloyd's Illinois was dismissed when it claimed that the complaint should have been against Lloyd's (of London).

¶ 70    I have a problem with the wholesale dismissal of these claims. The school board's own emails confirm that Beckwith did not submit statutorily required resolutions to the board for a vote to transfer funds from the working cash fund to the other appropriated line items.

¶ 71    No one is saying that any of this money was used for exotic vacations or expensive personal items. However, the law is very clear that the board must vote on a resolution to transfer the funds. This is because without that public notice taxpayers would be unaware–as these taxpayers were–that the money in the working cash fund, money which was obtained by the issue of bonds, and at taxpayer expense, was being used in excess of the appropriated

amount for some expenses, which means ultimately that the tax levy for the district would also be wrong or inflated.

¶ 72    For example (using fictitious numbers), if the school board wanted to spend, say, $1 million on books, it should appropriate $1 million for that purpose. That way taxpayers and parents know what the spending looks like. Instead, in essence, this board appropriated $750,000 for books as a line item in its budget, and then without telling anyone, transferred in another $250,000 from the working cash fund to cover an expense that was not in the budget, was not appropriated, was not in any public meeting or public record and was not disclosed by the board or its accountants. That money was obtained by the sale of bonds and is expensive money.

¶ 73    The working cash fund is supposed to be used to cover timing gaps in funding, *i.e.*, in cases where the property tax money does not come in before the bills are due. It is not supposed to be used to add extra to the budgeted line items. That would defeat the whole purpose of the resolution requirement, and in fact defeats the purpose of the working cash fund itself.

¶ 74    In addition, Beckwith's bond for $8 million is for him to "faithfully discharge the duties of his office *according to the law*" which he clearly did not do. (Emphasis added.)

¶ 75    Certainly the School Code itself is complicated and this particular part of the legislation adds to that complication in that it clearly sets up both a criminal and civil action in the same paragraph, but is more specific about the criminal penalties. I believe that a fair reading of the statute could be that the failure to consider and vote on the required resolution creates a civil liability, which appears to be "for any sum that may be unlawfully diverted from the working cash fund or otherwise used." 105 ILCS 5/20-6 (West 2010). I believe a plain reading of the language in section 20-6 makes it clear that while law enforcement officials have the responsibility for pursuing the criminal sanctions, a taxpayer on behalf of the school district may pursue the civil remedies, and I do not see anything in the statute that makes the second dependent on the first.

¶ 76    I also believe that the accounting firm was dismissed prematurely and that Lloyd's Illinois (see seal on the bond) and Lloyd's London were dismissed without paying enough attention to the bond.

¶ 77    In addition, the defendants in their brief take great pains to separate a school board from a school district. However, in this case the school district is the entity for which the school board is the legislative body. The distinction is important, but could easily and properly be corrected with amended pleadings, which, I believe, is the correct course of action.

¶ 78    The board and Beckwith did not follow the law. The accounting firm knew or should have known it. The bond on Beckwith covered him for his acts. Taxpayers are correct in saying that this finance shell game cost them money because if the board had spent only what was appropriated, there would have been no need to raid the working cash fund to add extras that were not appropriated, so there would have been no need for that amount of bonds to be issued to fund the working cash fund.

¶ 79    I believe that the taxpayers should be allowed to amend their complaints, move forward with discovery, and pursue recovery from the bonding company, Lloyd's, for their losses in an accounting that includes the cost of the obligation bonds and interest and from the accountant, Knutte, for professional negligence.

¶ 80    The Center for Open Government on behalf of the taxpayer plaintiffs was not, in my opinion, given its rightful opportunity to pursue robust discovery and amend its complaints.

¶ 81    I believe this case should be allowed to run its course and not be dismissed on the motions. There is so little case law on section 20-5 and section 20-6 it is, I believe, an important enough set of issues to deserve a full case. Taxpayers have a direct and specific interest in transparency in government. I would reverse and remand.