# Illinois Official Reports

## Supreme Court

*Lutkauskas v. Ricker*, 2015 IL 117090

| | |
|---|---|
| Caption in Supreme Court: | ANTHONY LUTKAUSKAS *et al.*, Appellants, v. TIMOTHY RICKER *et al.*, Appellees. |
| Docket No. | 117090 |
| Filed<br>Rehearing denied | January 23, 2015<br>March 23, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A taxpayer derivative action was properly dismissed for pleadings failing to state facts adequate to justify any remedy where, although it was alleged that, for lack of a specific school board resolution, funds were improperly transferred from a school district's working cash fund in violation of the School Code, there were no allegations that any money was stolen, converted, or otherwise spent on anything but legitimate school district expenses. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Rita M. Novak and the Hon. LeRoy K. Martin, Jr., Judges, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Clinton A. Krislov and John P. Orellana, of Krislov & Associates, Ltd., of Chicago, for appellants. |
| | Williams Montgomery & John Ltd., of Chicago (Thomas F. Falkenberg, Alyssa M. Reiter and Kirstin B. Ives, of counsel), for appellee Knutte & Associates, P.C. |
| | Justino D. Petrarca, Kevin B. Gordon and James A. Petrungaro, of Scariano, Himes and Petrarca, Chtrd., of Chicago, for appellees Robert Beckwith *et al*. |
| | Clausen Miller P.C., of Chicago (Melinda S. Kollross, Edward M. Kay, Paige M. Neel and Mark J. Sobczak, of counsel), for appellee Timothy Ricker. |
| | Wilson Elser Moskowitz Edelman & Dicker LLP, of Chicago (Melissa A. Murphy-Petros and Kimberly E. Blair, of counsel), for appellee Certain Underwriters at Lloyd's London. |
| | |
| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1        Plaintiffs, resident taxpayers of Lemont-Bromberek Combined School District 113A (School District), filed three taxpayer derivative actions on behalf of the School District. Plaintiffs sought relief against certain officers and employees of the School District and current and former members of its board of education (collectively, the District defendants), alleging2 that they had improperly transferred money from the School District's Working Cash Fund, in violation of article 20 of the School Code (105 ILCS 5/20-1 *et seq.* (West 2010)). Plaintiffs also sought recovery against the surety that issued the bond for the School District's treasurer and against the accounting firm that performed audits of the School District's finances during the relevant time period. The circuit court of Cook County dismissed all of plaintiffs' claims, and the appellate court affirmed. 2013 IL App (1st) 121112. We allowed plaintiffs' petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. July 1, 2013)). For the reasons that follow, we affirm the judgment of the appellate court.

BACKGROUND

¶ 3     Article 20 of the School Code permits a school district to create and maintain a Working Cash Fund to meet expenditures for the school district's purposes. 105 ILCS 5/20-1 (West 2010). A Working Cash Fund is funded either through tax levies or by issuance of bonds and is designed to ensure that a school district has enough funds on hand to meet its financial obligations pending the deposit of tax receipts. 105 ILCS 5/20-2, 20-3, 20-4 (West 2010). Section 20-4 specifically authorizes the school board to use money in the Working Cash Fund "for any and all school purposes." 105 ILCS 5/20-4 (West 2010). Section 20-5 authorizes the transfer of sums of money from the Working Cash Fund to other funds in accordance with a specified procedure that requires passage of a school board resolution directing the school treasurer to transfer "such sums as may be required for the purposes *** authorized." 105 ILCS 5/20-5 (West 2010). A Working Cash Fund may be either abated or abolished. 105 ILCS 5/20-8, 20-10 (West 2010). Upon abolishment, the balance remaining in the Working Cash Fund is transferred to the Educational Fund and any monies owed the Working Cash Fund are to be paid into the Educational Fund. 105 ILCS 5/20-8 (West 2010).

¶ 4     Section 20-6 prescribes both criminal penalties and civil remedies for willful violations of the provisions of article 20. Section 20-6 provides:

> "Any member of the school board of any school district to which this Article is applicable, or any other person holding any office, trust, or employment under such school district who wilfully violates any of the provisions of this Article shall be guilty of a business offense and fined not exceeding $10,000, and shall forfeit his right to his office, trust or employment and shall be removed therefrom. Any such member or other person shall be liable for any sum that may be unlawfully diverted from the working cash fund or otherwise used, to be recovered by such school district or by any taxpayer in the name and for the benefit of such school district in an appropriate civil action; provided that the taxpayer shall file a bond for all costs and be liable for all costs taxed against the school district in such suit, and judgment shall be rendered accordingly. Nothing herein shall bar any other remedies." 105 ILCS 5/20-6 (West 2010).

¶ 5     In this case, the School District maintained a Working Cash Fund pursuant to the terms of article 20. On December 2, 2009, the school board passed a resolution to partially abate the fund, and on April 28, 2010, the school board passed a resolution abolishing the Working Cash Fund.

¶ 6     On December 17, 2010, plaintiffs Laura Reigle, Duane Bradley, and Louis Emery filed a three-count complaint seeking monetary damages and other relief based on improper transfers from the School District's Working Cash Fund. On that same date, plaintiff Janet Hughes, who was represented by the same counsel, filed a separate complaint that was virtually identical to that of Reigle, Bradley, and Emery. Both complaints were brought "for and on behalf of" the School District and named as defendants several current and former members of the School District's board of education, as well as Timothy Ricker, the School District's superintendent, and Robert Beckwith, the School District's treasurer. In addition, both complaints sought recovery from Knutte & Associates, P.C. (Knutte), the accounting firm that performed financial audits for the School District from 2007 through 2010, and from Lloyd's Illinois Inc. (Lloyd's), the surety company that issued the bond securing the performance of Beckwith. The

two actions filed by Reigle, Bradley, Emery, and Hughes (the original plaintiffs) were consolidated.

¶ 7   Count I of the consolidated action asserted statutory violations against the District defendants and alleged that they had willfully violated sections 20-4 and 20-5 of the School Code by improperly transferring and spending money from the School District's Working Cash Fund. In particular, plaintiffs claimed that the District defendants' improper actions consisted of the following: failure to pass any resolutions authorizing the transfers, as required by section 20-5; failure to reimburse the Working Cash Fund upon receipt of tax revenues; expenditure of money in excess of "legal appropriation" and attempt to conceal such expenditures; and failure to document the improper transfers and expenditures.

¶ 8   As relief, count I requested (1) a declaration that the District defendants had forfeited their offices and employment with the School District, (2) a monetary judgment in an amount sufficient to "make the [School District] whole" and reimburse the funds that were "unlawfully diverted" from the Working Cash Fund, and (3) fines assessed pursuant to section 20-6.

¶ 9   Count II sought recovery from Lloyd's and alleged that, as surety for Beckwith, it was liable for damages suffered by the School District as a result of Beckwith's failure to faithfully discharge the duties of his office. Count II subsequently was voluntarily dismissed, with leave to replead against another Lloyd's entity.

¶ 10   Count III was directed against Knutte and asserted that the accounting firm was liable under section 20-6 of the School Code for accountant negligence. This claim was predicated on allegations that, despite knowledge of the District defendants' alleged statutory violations, Knutte issued "clean" audit reports of the School District's financial statements for the years 2007 through 2009, which concealed the District defendants' illegal conduct and resulted in substantial losses to the School District.

¶ 11   The original complaints contained no allegations that any of the School District's money had been stolen, converted, or otherwise spent on anything but legitimate School District expenses.

¶ 12   The District defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2010). With regard to count I, the District defendants sought dismissal under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)) for failure to plead sufficient facts to support a violation of the School Code and based on the fact that they had been sued in their individual capacities. The District defendants also sought dismissal of count I under section 2-619 (735 ILCS 5/2-619 (West 2010)) on the grounds that (1) plaintiffs lacked standing to sue under section 20-6 of the School Code, which was criminal in nature and did not authorize a private right of action absent a predicate criminal conviction, and (2) legislative immunity protected the District defendants from liability. In addition, the motion contended that certain of the named defendants should be dismissed because none of the factual allegations in the complaints were directed at those individuals.

¶ 13   Knutte filed a combined motion to dismiss count III, seeking dismissal under section 2-615 for failure to allege facts sufficient to support a claim for accountant negligence. In particular, the motion asserted that Knutte did not owe the plaintiffs a duty of care and that Knutte had disclosed the information that plaintiffs alleged had been concealed. Knutte also sought

dismissal of count III under section 2-619 on the ground that plaintiffs lacked standing to sue under the Illinois Public Accounting Act (225 ILCS 450/30.1 (West 2010)).

¶ 14 On July 17, 2011, the circuit court granted the motions to dismiss filed by the District defendants and Knutte. With regard to the dismissal of count I, the court determined that section 20-6 included both criminal and civil actions, with certain remedies reserved for each type of action. The court found that section 20-6 authorizes only the State of Illinois to seek removal of a public employee from office or imposition of fines for Working Cash Fund violations. The court further found that taxpayers who bring suit under section 20-6 on behalf of a school district are entitled to seek only recovery of funds for the benefit of the school district. Therefore, plaintiffs, as private taxpayers, could not seek removal of any School District employee or official from office, nor did they have the right to request imposition of fines for School Code violations. In addition, the court held that plaintiffs had not pled sufficient facts to support a violation of the Working Cash Fund provisions of the School Code. In particular, the court cited plaintiffs' failure to delineate the wrongful conduct alleged to have been committed by each of the 10 District defendants. Accordingly, the court ordered that count I be stricken with leave to replead.

¶ 15 With respect to Knutte's motion to dismiss count III, the circuit court found that there was no basis for liability against the accounting firm. In reaching this conclusion, the court first noted that public accountants are not among the list of potential defendants identified in section 20-6 of the School Code. In addition, the court observed that there is no privity of contract between Knutte and the individual taxpayer plaintiffs who brought the derivative action. Consequently, the court dismissed count III with prejudice. At plaintiffs' request, the circuit court entered a finding under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just cause to delay appeal of the dismissal of count III. Plaintiffs did not appeal the judgment in favor of Knutte.

¶ 16 On August 29, 2011, the original plaintiffs filed an amended consolidated complaint, asserting two counts against the District defendants. Count I again asserted statutory violations and claimed that certain of the District defendants willfully violated sections 20-4 and 20-5 of the School Code by causing money to be diverted from the School District's Working Cash Fund without the passage of a resolution or reimbursement. The amended complaint further alleged that certain of the District defendants attempted to conceal the allegedly improper spending from the Working Cash Fund by using money from other funds and by under-budgeting for the School District's expenses. As relief, plaintiffs again requested a declaration that the District defendants had forfeited their offices and employment, imposition of fines pursuant to section 20-6 of the School Code, and entry of judgment against the District defendants "personally in an amount sufficient to make [the School District] whole and replace the public funds *** unlawfully diverted from the Working Cash Fund."

¶ 17 The amended complaint also asserted in count IA that the District defendants breached their fiduciary duties to the School District. This claim was based on the same conduct underlying the statutory violations alleged in count I and sought the same relief. The amended complaint contains no allegation that any of the School District's money was stolen, converted, or otherwise spent on anything other than legitimate School District expenses.

¶ 18 Count II of the amended complaint was directed against Underwriters at Lloyd's, London and restated the claim that the surety for Beckwith was liable for damages suffered by the School District as a result of Beckwith's failure to faithfully discharge the duties of his office.

¶ 19 The amended complaint also included counts III and IV, which were directed against Knutte. Count III restated the claim for accountant negligence that had been dismissed with prejudice. Count IV asserted a taxpayer derivative action based on allegations similar to those underlying the accountant negligence claim.

¶ 20 Plaintiffs also filed a motion to reconsider the dismissal of count III with prejudice, in which they requested leave to file the amended claims against Knutte. The circuit court denied that motion and ordered that counts III and IV of the amended complaint be stricken.

¶ 21 On October 11, 2011, plaintiff Anthony Lutkauskas, who was represented by the same counsel as the original plaintiffs, filed a separate complaint against the District defendants, Lloyd's, and Knutte. Lutkauskas's claims against the District defendants and Lloyd's were virtually identical to the claims asserted by the original plaintiffs in their amended complaint. In seeking recovery against Knutte, Lutkauskas's complaint asserted claims for accountant negligence, professional malpractice, breach of fiduciary duty, and aiding and abetting illegal conduct by the District defendants. The action filed by Lutkauskas was consolidated with that of the original plaintiffs, and all of the defendants sought dismissal of the two pending complaints.

¶ 22 In response to the original plaintiffs' amended complaint, the District defendants filed a combined motion to dismiss asserting several grounds for dismissal, which the circuit court ruled would also apply to Lutkauskas's complaint. Of relevance here, the District defendants asserted that the plaintiffs' claims should be dismissed under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)) for failure to plead a *prima facie* cause of action for violation of the School Code or for breach of fiduciary duty. In addition, the motion sought dismissal under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)) because common law legislative immunity and the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201 (West 2010)) barred plaintiffs' claims.

¶ 23 Lloyd's sought dismissal of the claims against it because no recovery could be had on the bond, where Beckwith was not liable for failing to faithfully discharge the duties of his office. Knutte moved for dismissal of Lutkauskas's claims against it on the ground that they were barred by the doctrine of *res judicata*.

¶ 24 The circuit court found that the complaints were deficient because they failed to allege sufficient facts to support a violation of the School Code and because the recovery sought by plaintiffs would constitute an impermissible "windfall." The court further found that plaintiffs' claims were barred by the Tort Immunity Act because the actions attributed to the District defendants were discretionary, not ministerial, in nature. Accordingly, the court dismissed the claims against the District defendants with prejudice and similarly dismissed the claims against Lloyd's that were predicated on Beckwith's alleged liability. In addition, the circuit court ordered that Lutkauskas's claims against Knutte be stricken on the ground that they were barred by the doctrine of *res judicata*.

¶ 25 Plaintiffs appealed, and a divided panel of the appellate court affirmed, holding, *inter alia*, that plaintiffs could not recover against the District defendants based on the assertion that

money from the Working Cash Fund had been "unlawfully diverted." 2013 IL App (1st) 121112, ¶¶ 29-34. This conclusion was premised on the determination that an unlawful diversion occurs where money is used for a purpose that is not allowed by statute. *Id.* ¶¶ 30-32. The appellate court held that, because plaintiffs did not allege that money transferred from the Working Cash Fund was used for an improper purpose, plaintiffs could not show any loss to the School District as a result of defendants' actions. *Id.* ¶ 32. The appellate court concluded that, absent such allegations, "plaintiffs do not otherwise have standing" to seek recovery, on behalf of the district, of money that was transferred from the Working Cash Fund without a board resolution. *Id.* ¶ 34. The appellate court further held that plaintiffs' breach of fiduciary duty claims failed for a similar reason. *Id.* ¶ 35. The appellate court also affirmed the dismissal of the claims against Lloyd's (*id.* ¶ 36) and the finding that Lutkauskas's claims against Knutte were barred by *res judicata* (*id.* ¶¶ 39-49).

¶ 26    The dissenting justice expressed the opinion that, considering the dearth of precedent analyzing the relevant School Code provisions, plaintiffs should be allowed to amend their complaints and move forward with discovery. *Id.* ¶¶ 55, 79-81 (Pucinski, J., dissenting). This appeal followed.

¶ 27                                    ANALYSIS
¶ 28              I. Dismissal of the Claims Against the District Defendants and Lloyd's
¶ 29    Plaintiffs first contend that the circuit court erred in dismissing their statutory violation and breach of fiduciary duty claims against the District defendants. The District defendants' motions to dismiss were brought pursuant to section 2-619.1 of the Code of Civil Procedure, which allows a party to move for dismissal under both sections 2-615 and 2-619. 735 ILCS 5/2-619.1 (West 2010). A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint. *Carr v. Koch*, 2012 IL 113414, ¶ 27. A motion brought pursuant to section 2-619 admits the sufficiency of the complaint, but asserts an affirmative defense or other matter that avoids or defeats that claim. *Id.* This court's review of a dismissal under either section 2-615 or section 2-619 is *de novo*. *Id.* Also, because resolution of this issue involves statutory construction, our review is *de novo*. *Nelson v. Kendall County*, 2014 IL 116303, ¶ 22.

¶ 30    Plaintiffs argue that, based on the plain language of section 20-6, their claims against the District defendants adequately alleged violations of article 20 of the School Code and should not have been dismissed for insufficient pleading. Defendants respond by arguing that plaintiffs lack standing to sue derivatively on behalf of the School District because it is undisputed that the School District has not suffered any injury in fact.

¶ 31    In resolving this issue, we initially observe that, because a plaintiff can sustain a cause of action only where he or she has suffered some injury to a legal right, harm caused by the defendant's conduct is an essential element of every cause of action. *Williams v. Manchester*, 228 Ill. 2d 404, 426 (2008); *Reuter v. MasterCard International, Inc.*, 397 Ill. App. 3d 915, 927 (2010); 1A C.J.S. *Actions* § 59 (2005). As a consequence, an allegation that the plaintiff has suffered an injury resulting from the defendant's action is both a pleading requirement (*Reuter*, 397 Ill. App. 3d at 928; 71 C.J.S. *Pleading* § 116 (2005)) and a prerequisite of standing (*Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35). In this case, regardless of whether a failure to satisfy this requirement is characterized as a lack of standing or a pleading deficiency, the relevant question presented is whether section 20-6 obligated plaintiffs to assert that the money

transferred from the Working Cash Fund had been used for an improper purpose and resulted in an actual loss to the School District.

¶ 32      A taxpayer derivative suit is brought for the benefit of a governmental entity to enforce a cause of action belonging to that entity. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 494 (2005). In such an action, the claimed loss is not personal to the taxpayer, but is the injury sustained by the governmental entity for whose benefit the action is brought. *Id.* In the absence of resultant damage, there can be no cause of action premised on the violation of a statute. 1A C.J.S. *Actions* § 59 (2005).

¶ 33      As noted above, plaintiffs' claims that asserted statutory violations were brought pursuant to section 20-6 of the School Code and sought to impose personal liability on the District defendants for improper transfers from the Working Cash Fund. Section 20-6 of the School Code provides, in relevant part, as follows:

> "Any member of the school board of any school district to which this Article is applicable, or any other person holding any office, trust, or employment under such school district who wilfully violates any of the provisions of this Article *** shall be liable for any sum that may be unlawfully diverted from the working cash fund or otherwise used, to be recovered by such school district or by any taxpayer in the name and for the benefit of such school district in an appropriate civil action ***." 105 ILCS 5/20-6 (West 2010).

¶ 34      On appeal, plaintiffs contend that the phrase "unlawfully diverted" in section 20-6 refers to any sum that has been transferred from the Working Cash Fund without the passage of a board resolution and subsequent reimbursement, as required by sections 20-4 and 20-5. According to plaintiffs, the failure to follow the procedural mechanisms detailed in those sections renders a Working Cash Fund transfer unlawful and necessarily means that the transferred money has been "unlawfully diverted." Plaintiffs argue that a civil action brought pursuant to section 20-6 need not allege that the transferred money was used for an improper purpose.

¶ 35      In response, the District defendants argue that the dismissal of plaintiffs' claims against them was proper in light of the fact that plaintiffs did not, and could not, allege that the transferred funds had been used for an improper purpose. According to the District defendants, the failure to comply with the procedural requirements for Working Cash Fund transfers is insufficient to allege a cause of action under section 20-6, unless the plaintiff has also alleged that the transferred money was used for an unauthorized purpose. Therefore, the narrow question presented here is whether the terms of section 20-6 require a plaintiff to allege that improperly transferred funds were used for an invalid purpose in order to plead a violation under that section.

¶ 36      Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Nelson*, 2014 IL 116303, ¶ 23. The best evidence of legislative intent is the language of the statute itself, which must be given its plain, ordinary and popularly understood meaning. *Id.* Clear and unambiguous language will be enforced as written. *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 230 (2006). In addition, a court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15. Moreover, courts will presume that the legislature did not intend to enact a statute that leads to absurdity,

inconvenience, or injustice. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002).

¶ 37 According to the terms of section 20-6, the board members, officials, and employees of a school district who willfully violate the provisions of article 20 of the School Code "shall be liable for any sum that may be unlawfully diverted from the working cash fund." 105 ILCS 5/20-6 (West 2010). Although the phrase "unlawfully diverted" is not defined in the statute, this court's long-standing precedent demonstrates that phrase has a settled meaning. As observed by the appellate court, we have consistently held that "unlawful diversion" of funds contemplates that such funds have been used for an improper purpose that is not authorized by statute. In *Gates v. Sweitzer*, 347 Ill. 353 (1932), we held that "[m]unicipal officers have no right to divert moneys from one fund to another and different fund for which it was not appropriated. But the word 'divert' is used in the sense of turning such fund permanently from its purpose or the final appropriation of it to some other use." *Id.* at 359; see also *Michaels v. Barrett*, 355 Ill. 175, 185-86 (1934). Based on this reasoning, we held in *People ex rel. Brenza v. Gilbert*, 409 Ill. 29 (1951), that an improper diversion of funds occurred where funds were used for a different purpose than that allowed by statute. *Id.* at 37. We further noted, however, that a plaintiff who seeks to recover funds that have been "unlawfully diverted" must have suffered damage. *Id.* at 38 (stating that the objection to a tax was properly overruled "in view of the fact that [tax objector] is not and cannot be damaged"). We reached the same conclusion in *People ex rel. Redfern v. Penn Central Co.*, 47 Ill. 2d 412 (1971). At issue in *Redfern* was the validity of the transfer of money from a school district's education fund to the Illinois municipal retirement fund. *Id.* at 414. Relying on the cases cited above, we held that the transfer constituted an "unlawful diversion" because the statute did not authorize loans between the two funds. *Id.* at 416-18. Yet, we repeated our admonition in *Gilbert* that recovery should not be permitted unless the plaintiff has sustained an injury. See *id.* at 418 (citing *Gilbert*, 409 Ill. at 38 (holding that an objection to a tax levy should disclose that the taxpayer has been injured)). Accordingly, we stated, "we do not judge that [the] absence of authority to transfer, standing by itself, was sufficient to support the defendant's objections to the tax levy." *Id.*

¶ 38 Based on this precedent, we conclude that in order to seek recovery under section 20-6 for the unlawful diversion of funds, a plaintiff must allege that money improperly transferred from the Working Cash Fund was used for an improper purpose, resulting in an actual loss to the school district. As noted by both the appellate and circuit courts, the statutory construction advanced by plaintiffs would result in an impermissible "windfall" by forcing a school district official, employee or board member to reimburse the district for funds that were spent on legitimate district expenses. This result cannot be what the legislature intended. Although plaintiffs have requested that the District defendants be required to "make the [School District] whole," there is no indication in plaintiffs' complaints that the School District has sustained any actual loss. Consequently, the dismissal of the statutory violations asserted against the District defendants was proper.

¶ 39 Plaintiffs' breach of fiduciary duty claims against the District defendants suffer from the same defect. Those claims were based on the same factual assertions underlying the statutory violations and also failed to allege that the funds transferred from the Working Cash Fund had been used for any purpose other than legitimate school district expenses. As a result, plaintiffs have not sufficiently claimed that the District defendants' alleged breaches of their fiduciary

duties resulted in a loss suffered by the School District. See *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 976 (2010) (recognizing that a party seeking to recover for breach of fiduciary duty must establish the existence of a fiduciary duty, breach of that duty, and damages proximately caused by the breach).

¶ 40　　Further, because plaintiffs cannot recover against defendant Beckwith, the treasurer of the school district, their claim against Lloyd's, as surety of his conduct, was properly dismissed. See *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill. App. 3d 651, 668 (1986) (recognizing that if a principal and surety are sued jointly and the action against the principal fails, the surety is discharged). Accordingly, the appellate court correctly held that the claims against the District defendants and Lloyd's were properly dismissed.

¶ 41　　　　　　　　II. Dismissal of Lutkauskas's Claims Against Knutte
¶ 42　　　　　　　　A. Whether the Doctrine of *Res Judicata* Applies

¶ 43　　We next address Lutkauskas's argument that the circuit court erred in dismissing his claims against Knutte on the ground of *res judicata*. As noted above, our review of a dismissal under section 2-619 is *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Also, the determination of whether a claim is barred under the doctrine of *res judicata* is a question of law, which we review *de novo*. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 45; *Arvia v. Madigan*, 209 Ill. 2d 520, 526 (2004).

¶ 44　　*Res judicata* is an equitable doctrine designed to prevent multiple lawsuits between the same parties where the facts and issues are the same. *Murneigh v. Gainer*, 177 Ill. 2d 287, 299 (1997). Under the doctrine, a final judgment on the merits rendered by a court of competent jurisdiction operates to bar a subsequent suit between the same parties and involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998); *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334-35 (1996). In addition to the matters that were actually decided in the first action, the bar also applies to those matters that could have been decided in the prior suit. *River Park, Inc.*, 184 Ill. 2d at 302; *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 529 (1975). Three requirements must be satisfied for *res judicata* to apply: (1) the rendition of a final judgment on the merits by a court of competent jurisdiction; (2) the existence of an identity of cause of action; and (3) identity of the parties or their privies. *River Park, Inc.*, 184 Ill. 2d at 302; *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994).

¶ 45　　In this case, Lutkauskas seeks to challenge the existence of all three elements. With regard to the first requirement, Lutkauskas asserts that the dismissal of the original plaintiffs' claims against Knutte did not constitute an adjudication on the merits because that ruling was based on a lack of standing. Yet, Lutkauskas did not raise this argument in the circuit court. Moreover, he specifically conceded in the appellate court that "a final judgment was rendered," and that court's opinion noted his agreement that the first element was satisfied. 2013 IL App (1st) 121112. Accordingly, Lutkauskas has forfeited any argument that the dismissal with prejudice of the original plaintiffs' claims against Knutte was not a final judgment on the merits, and we need not address it here. See *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 301 (2006) (recognizing that arguments not raised in either the circuit or appellate court are forfeited).

¶ 46　　Lutkauskas next contends that the second prerequisite of *res judicata* has not been satisfied. Lutkauskas argues that there is no identity of cause of action because he asserted

additional claims against Knutte that were not included in the original plaintiffs' complaints. This argument is without merit.

¶ 47    In *River Park*, this court adopted the transactional test to determine identity of causes of action. *River Park, Inc.*, 184 Ill. 2d at 310-11. There, we held that "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* at 311. Under this principle, the dismissal of a single theory of recovery against a particular defendant operates as a final adjudication of all claims based on other theories of recovery that could have been brought as part of the initial action, as long as they arise from the same core of operative facts. Therefore, simply alleging a new theory of recovery is insufficient to assert a different cause of action, where multiple theories of recovery are predicated on the same core of operative facts.

¶ 48    In this case, Lutkauskas's complaint included a count against Knutte for accountant negligence, as well as additional counts seeking recovery for professional malpractice, breach of fiduciary duty, and aiding and abetting illegal conduct. Although these counts were based on different theories of recovery, they were predicated on the same underlying facts that were alleged by the original plaintiffs—that Knutte issued "clean" audit reports for the years 2007 through 2009, despite its knowledge of the District defendants' alleged wrongdoing. Therefore, Lutkauskas's additional claims against Knutte arose from the same core of operative facts that formed the basis for the original plaintiffs' claims and could have been adjudicated in the prior action. The dismissal of the original plaintiffs' claims with prejudice was a final resolution of the cause of action against Knutte. *Id.* Lutkauskas's argument that *res judicata* does not apply because he has raised different theories of recovery fails because it is in direct conflict with the principles articulated in *River Park*.

¶ 49    Lutkauskas also claims that the third element of *res judicata* has not been met because there is no identity of parties or their privies. In making this argument, Lutkauskas points to the fact that he was not a party to the prior action, and he further asserts that he is not in privity with the original plaintiffs. We disagree that there is a lack of privity.

¶ 50    In considering whether *res judicata* applies, "[p]rivity is said to exist between parties who adequately represent the same legal interests." (Internal quotation marks omitted.) *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992). For purposes of *res judicata*, "[i]t is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Id.* Moreover, adequate representation does not mandate that the litigant in the prior suit be successful. *Id.* at 297 (recognizing that rejection of the arguments advanced by a party to a previous action "cannot be evidence of inadequate representation").

¶ 51    In this case, Lutkauskas did not bring suit in his own right to enforce a claim that was personal to him. Rather, he filed his action on behalf of the District, which was the real party in interest. As a consequence, his claims against Knutte were those of the District, as was true of the claim asserted in the earlier action. Also, though Lutkauskas asserted different theories of recovery, the conduct that formed the basis for his claims was the same as that underlying the original plaintiffs' claims, and he sought the same relief. Accordingly, Lutkauskas was in privity with the original plaintiffs, and the final requirement of *res judicata* is satisfied.

¶ 52        Lutkauskas further contends that the doctrine of *res judicata* cannot be applied in this case because it would result in a denial of due process. In support, he relies on three United States Supreme Court cases: *Taylor v. Sturgell*, 553 U.S. 880 (2008); *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160 (1999); and *Richards v. Jefferson County*, 517 U.S. 793 (1996). Yet, as the appellate court observed, these decisions do not govern the instant case. 2013 IL App (1st) 121112, ¶¶ 45-49.

¶ 53        In *Taylor v. Sturgell*, the Supreme Court considered whether an adverse judgment against a party seeking disclosure of documents under the Freedom of Information Act (FOIA) (5 U.S.C. § 552 (2006)) would preclude a subsequent action by another person who sought the same documents. *Taylor*, 553 U.S. at 885. In resolving this question, the Supreme Court observed that the right to request records under the FOIA statute is granted to individual persons, not the public at large. *Id.* at 885, 903. The Court also observed that the doctrine of *res judicata* is subject to due process limitations, which serve to protect the rights of individuals who were not parties to a prior adjudication. *Id.* at 891, 901. Yet, the Court noted that there are several recognized exceptions to the general rule against nonparty preclusion, including where privity exists between the parties to the actions. *Id.* at 884, 893-95. In rejecting the doctrine of preclusion by "virtual representation," the Supreme Court held that the question of whether a subsequent action is barred by a prior judgment must be decided according to the established grounds for nonparty preclusion. *Id*. at 904.

¶ 54        We find that *Taylor* is factually distinguishable because it did not involve successive taxpayer derivative actions, in which multiple plaintiffs filed identical actions to protect the same interests of a governmental entity. Rather, the two plaintiffs in *Taylor* brought suit to enforce their own individual rights to request disclosure of federal records, and any relief afforded under the FOIA statute would accrue to them personally. *Id.* at 885, 903. Here, the original plaintiffs and Lutkauskas brought suit in a representative capacity to protect the interests of the School District. In both actions, the School District was the real party in interest, and the relief sought would accrue to the School District, not the named plaintiffs. Because the interests of the School District were represented in both actions, the due process concerns that were recognized and pivotal to the result reached in *Taylor* are not implicated.

¶ 55        In *Richards v. Jefferson County*, 517 U.S. 793 (1996), the Supreme Court considered whether an action challenging the validity of an occupation tax was barred by a judgment upholding the validity of the tax in a previous suit brought by different taxpayers. *Id.* at 794-96. The *Richards* Court held that application of *res judicata* was inconsistent with the principles of due process because the plaintiffs in the original action "did not sue on behalf of a class; their pleadings did not purport to assert any claim against or on behalf of any nonparties; and the judgment they received did not purport to bind any *** taxpayers who were nonparties." *Id.* at 801. Based on these circumstances, the Court concluded that the second action by different taxpayers was not barred by the earlier judgment. *Id.* at 801-02. In reaching this conclusion, the Supreme Court particularly noted that the underlying right asserted by the plaintiff taxpayers was "personal in nature." *Id.* at 802 n.6. Thus, the case presented was distinguishable from the type of case in which a taxpayer brings suit "to complain about an alleged misuse of public funds, [citations] or about other public action that has only an indirect impact on his interests, [citations]." *Id.* at 803. The Court also observed that *res judicata* may be applied where the party bringing a second action is in privity with a party to the earlier judgment. *Id.* at 798.

¶ 56 In *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160 (1999), the Supreme Court again considered whether the doctrine of *res judicata* applied to bar a suit challenging a tax that had been upheld in prior litigation brought by different taxpayers. *Id.* at 167-68. Finding that the case presented was indistinguishable from *Richards*, the Court reiterated its primary holding in that decision and concluded that the earlier judgment did not have preclusive effect because the successive tax challenges involved different plaintiffs and different tax years; neither was a class action; and there was no claim of privity between the two sets of plaintiffs. *Id.*

¶ 57 Thus, *Taylor*, *Richards*, and *South Central Bell* establish that the requirements of due process prohibit the application of *res judicata* to bar an action by a different plaintiff, where the right sought to be enforced is personal in nature and none of the recognized grounds for nonparty preclusion apply. In this case, however, the original plaintiffs and Lutkauskas brought suit in a representative capacity on behalf of the School District. Lutkauskas's claim was not personal in nature, and the interests of the School District that he sought to protect were identical to those advanced in the previous action by the original plaintiffs. As a consequence, the due process concerns underlying the decisions in *Taylor*, *Richards*, and *South Central Bell* are not at issue here, and those cases do not support Lutkauskas's due process argument. For all of the foregoing reasons, we conclude that the doctrine of *res judicata* applies in this case, and Lutkauskas is precluded from pursuing his claims against Knutte.

¶ 58 B. Whether Supreme Court Rule 304(a) Requires Amendment

¶ 59 As a final matter, we briefly dispose of Lutkauskas's assertion that Supreme Court Rule 304(a) (eff. Feb. 26, 2010) requires clarification and should be amended. According to Lutkauskas, the language of Rule 304(a) indicates that an appeal brought under its terms is permissive, and the wording of the rule should be changed to clearly reflect that the requirements of the rule are mandatory. This assertion is without merit.

¶ 60 As Lutkauskas acknowledges, Rule 304(a) provides as follows:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party. *The time for filing a notice of appeal shall be as provided in Rule 303. In computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required finding shall be treated as the date of the entry of final judgment.* In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (Emphasis added.) Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

¶ 61 The terms of Rule 304(a) explicitly state that the time for filing the appeal is governed by Rule 303 and that the entry of the required finding shall be treated as the date of the entry of final judgment. *Id.* Rule 303, in turn, specifically provides that a notice of appeal must be filed

within 30 days after the entry of the final judgment appealed from. Ill. S. Ct. R. 303(a) (eff. June 4, 2008). Pursuant to the clear and unambiguous language in these rules, an appeal that seeks to challenge a final judgment following a Rule 304(a) finding must be filed within 30 days of the entry of that finding. No amendment or clarification is required.

¶ 62                                    CONCLUSION

¶ 63      For the reasons set forth above, we conclude that the appellate court correctly held that the dismissal of all of the plaintiffs' claims against the District defendants and Lloyd's was proper. We also find that the doctrine of *res judicata* precludes Lutkauskas from pursuing his claims against Knutte. Accordingly, we affirm the judgment of the appellate court.

¶ 64      Affirmed.