# Illinois Official Reports

## Appellate Court

---

### *Bhutani v. Barrington Bank & Trust Co., N.A.*, 2015 IL App (2d) 140972

---

| | |
|---|---|
| Appellate Court Caption | BALDEV RAJ BHUTANI, Plaintiff-Appellant, v. BARRINGTON BANK AND TRUST COMPANY, N.A., as Successor in Interest to Charter National Bank and Trust, Hoffman Estates, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-14-0972 |
| Filed<br>Rehearing denied | August 13, 2015<br>October 27, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 14-L-20; the Hon. Michael B. Betar, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | John M. Driscoll and Robert G. Riffner, both of Riffner Firm, P.C., of Schaumburg, for appellant.<br><br>William J. Hurley III, of Crowley & Lamb, P.C., of Chicago, for appellee. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Justices Birkett and Spence concurred in the judgment and opinion. |

## OPINION

¶ 1        Plaintiff, Baldev Raj Bhutani, appeals the dismissal of his complaint for conversion and replevin, which rested on the alleged refusal by defendant, Barrington Bank & Trust Company, N.A., as successor in interest to Charter National Bank & Trust, Hoffman Estates (the bank), to allow Bhutani to take possession of certain pharmaceutical manufacturing equipment that remained on a foreclosed property after the bank took possession of the property. The bank successfully moved for the complaint's dismissal on the basis that the claims were barred by the foreclosure judgment. We hold that Bhutani's claims here and the foreclosure claim are essentially unrelated so that there can be no bar by prior judgment. We further hold that nothing in the foreclosure judgment gave the bank a possessory interest in the equipment superior to Bhutani's interest. We therefore reverse the dismissal and remand for further proceedings in Bhutani's action.

¶ 2                                I. BACKGROUND

¶ 3        The relevant history of this case begins with the foreclosure case, the source of the judgment by which the bank obtained the dismissal here. On December 7, 2011, according to copies of documents attached to Bhutani's complaint as exhibits, the bank obtained a judgment of foreclosure against Avtar, LLC,[1] and Bhutani. A copy of the mortgage shows that Avtar was the mortgagor and that Bhutani was the guarantor of the note. The court entered the judgment after finding Avtar and Bhutani in default. The judgment related to lots 1, 2, and 3 in Hawthorn Industrial Center–Gurnee Unit Three (the property) and to all its "rents, issues and profits, together with the tenements, hereditaments and appurtenances." The judicial sale went forward, and the report of sale showed that the amount then due the bank was $1,897,503.20. The bank was the high bidder; the sale resulted in a deficiency of $17,530.20. The court confirmed the sale on February 8, 2012, and approved an order of possession as of March 9, 2012.

¶ 4        A copy of a Lake County sheriff's report–an exhibit to Bhutani's complaint–shows that four deputies attempted to carry out an eviction on June 26, 2012. On entering the building on the property, they found chemical stocks and equipment related to pharmaceutical manufacturing. Because they were uncertain of the safety of removing the chemical stocks, they simply secured the building.

¶ 5        Bhutani initiated the case at issue on January 14, 2014, when he filled a two-count complaint for conversion and replevin against the bank. He asserted that he had made a series of requests, orally and in writing, seeking access to the property so that he could remove what he described as pharmaceutical equipment having a replacement value in excess of $4 million.

¶ 6        The bank moved to dismiss the action under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)), asserting that both counts of the complaint were barred by the foreclosure judgment. It asserted that the doctrines of *res judicata* and collateral

_____

[1]According to records of the Secretary of State, Avtar, LLC, was involuntarily dissolved on January 11, 2013. Secretary of State, Business Services, Corporation/LLC Search, available at http://www.ilsos.gov/corporatellc/ (last visited July 17, 2015) (name search on "Avtar").

estoppel defeated Bhutani's right to seek possession of the equipment and that Bhutani's attempt to reclaim the equipment amounted to an attempt to relitigate the foreclosure. It further claimed that, under Illinois law, it assumed no duty to care for personal property on or within the foreclosed property.

¶ 7　More specifically, the bank asserted that Bhutani had failed to state a claim for conversion in that, because it was in lawful possession of the property on which the equipment was located, it was not in wrongful possession of the equipment. It asserted that he lost the right to enter the property or to store personal property thereon and that this result was conclusive as to his right to the equipment.

¶ 8　The court granted the bank's motion to dismiss. It agreed that Bhutani's claims were barred by *res judicata* and collateral estoppel. It also ruled that the termination of Bhutani's "possessory interest in the premises" was a sufficient basis to dismiss.

¶ 9　Bhutani filed a timely motion to reconsider, in which he asserted that the court had misinterpreted the law. The court denied the motion, and Bhutani filed a timely notice of appeal.

¶ 10　　　　　　　　　　　　　II. ANALYSIS

¶ 11　On appeal, Bhutani argues that the bank failed to demonstrate that either form of bar by prior judgment applied or that it had a relevant possessory interest in the equipment. The bank responds with several arguments, at the core of which is the premise that its possessory interest was resolved by the order giving it possession of the property. The bank also raises a series of specific arguments against reversal that we will address after we address the applicability of the bank's defenses. We will conclude that the bank had no possessory interest sufficient to defeat Bhutani's claims and that, as a consequence, the bank failed to adequately set out its defenses of *res judicata* and collateral estoppel. Further, we will conclude that none of the other matters raised by the bank negates the success of Bhutani's arguments.

¶ 12　Preliminarily, we note that the propriety of a dismissal under section 2-619 of the Code is an issue of law and so subject to *de novo* review. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 43. Further, a defendant who seeks a dismissal by means of a section 2-619 motion bears the burden of setting out its defense–that is, of stating an affirmative matter sufficient to defeat the complaint. *Badette v. Rodriguez*, 2014 IL App (1st) 133004, ¶ 16.

¶ 13　We start our analysis by considering the underlying premise of the bank's arguments, namely, that its possessory right to the equipment was resolved by the order giving it possession of the property. We will conclude that, although the order gave the bank a kind of incidental and conditional right to possess the equipment, this right was not sufficient to defeat Bhutani's claims. The order can be taken to have adjudicated the bank's possessory right to the equipment incidental to its possession of the property, but it did not adjudicate the *relative* possessory rights to the equipment, between Bhutani and the bank. In explaining why this is so, we will address the bank's *res judicata* and collateral estoppel defenses. We will consider whether those defenses are rooted in the same incorrect idea that the bank's limited possessory right necessarily defeated Bhutani's ownership interests.

¶ 14　Initially, we will, for the purposes of further discussion, take it as a given that the order giving the bank possession of the property, in combination with the equipment's presence on the property, established for the bank a limited possessory right to the equipment. We note that

nothing in Illinois law suggests that the equipment's presence on the property was a barrier to the bank's taking possession of the property or that the bank, by taking possession of the property, acquired a duty to immediately deliver the equipment to its owner.

¶ 15    Whatever right the bank had to possess the equipment arose incidentally from its right to take possession of the property and, because of that source, was limited to what was necessary to take possession of the property. A description of an analogous situation should make that statement more concrete. Suppose that an individual who has lent a vehicle to another finds the borrower's dropped wallet in the returned vehicle. One might fairly conclude that the presence of the dropped wallet does not preclude the lender from using the vehicle even though that implies taking possession of the wallet. However, that conclusion does not require one to accept the further conclusion that the lender has a right to retain the wallet in the face of the borrower's reasonable attempts to recover it. This example suggests that a person can acquire a right to take possession of someone else's personal property but that the right is strictly limited to what is necessary for the first person to take possession of his or her own property.

¶ 16    Case law supports the conclusion that, when a person who has been lawfully evicted from real property leaves behind personal property, that person generally retains a right to recover the personal property. Direct litigation of the issue has been sparse, but the New York courts have twice addressed essentially the question at issue here.

¶ 17    The relatively recent case of *Miller v. Marchuska*, 819 N.Y.S.2d 591 (N.Y. App. Div. 2006), is closely on point. In *Miller*, one of the defendants, a tax buyer, obtained an order resulting in the eviction of the plaintiff, an auto mechanic, from the property from which he operated his business. The plaintiff's tools and equipment and some vehicles remained on the premises at the time of the eviction, but the tax buyer hired two other defendants to remove them to storage facilities. *Miller*, 819 N.Y.S.2d at 592. The plaintiff made a demand for his property's return that the defendants refused to meet. He filed suit, asserting conversion of his property, but the trial court granted summary judgment in favor of the defendants on the conversion claim. *Miller*, 819 N.Y.S.2d at 592. The appellate court noted that the plaintiff conceded that the eviction was proper, but it held that, in the absence of any evidence that any defendant had a lien on the plaintiff's property, the retention of the plaintiff's property after he demanded its return was unlawful and the basis for a conversion claim. *Miller*, 819 N.Y.S.2d at 592. The court further held that the law authorized a counterclaim for storage fees and similar expenses for the period before the plaintiff's demand for his property.

¶ 18    Also instructive is the New York Court of Appeals decision on which the *Miller* court relied, *Congregation Anshe Sefard of Keap Street, Inc. v. Title Guarantee & Trust Co.*, 50 N.E.2d 534 (N.Y. 1943). In *Congregation Anshe Sefard*, the plaintiff had been evicted from its synagogue building by its landlord and sought to recover "personal property *** of a religious character" that had remained in the synagogue after the eviction. *Congregation Anshe Sefard*, 50 N.E.2d at 534. The court held that an order that grants possession of real property relates only to the real property and therefore gives no right to " 'exercise dominion' " over the personal property of the dispossessed former occupant. *Congregation Anshe Sefard*, 50 N.E.2d at 535 (quoting *Reich v. Cochran*, 99 N.Y.S. 755, 756 (N.Y. App. Div. 1906)). The court thus held that, although the plaintiff could not use the conversion action to mount a collateral challenge to the eviction judgment, the plaintiff could go forward with its conversion action. *Congregation Anshe Sefard*, 50 N.E.2d at 534.

¶ 19        These cases provide three logical results. First, a judgment that gives possession of real property does not create a permanent right to possess any personal property on the premises. Second, and consequently, a suit to recover that property is not barred by the judgment for possession. Third, a party who has incurred expenses as a result of personal property being left behind may recover those expenses in conjunction with the other party's recovery of the property. We explicitly adopt the first two results and leave open the possibility that the third result is proper as well. Further, we reject all of the bank's arguments that suggest that its right to the property is inseparable from its right to the equipment.

¶ 20        We now address the specific issues of *res judicata* and collateral estoppel. We consider those doctrines in order.

¶ 21        Because no identity exists between the claim in the foreclosure action and Bhutani's claims, Bhutani's claims were not barred by *res judicata*. Three requirements must be satisfied for *res judicata* to apply: "(1) the rendition of a final judgment on the merits by a court of competent jurisdiction; (2) the existence of an identity of cause of action; and (3) identity of the parties or their privies." *Lutkauskas*, 2015 IL 117090, ¶ 44. When we decide whether claims have a common identity such that *res judicata* bars the later ones, we apply what is known as the "transactional test." *Lutkauskas*, 2015 IL 117090, ¶ 47. Under the transactional test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998); accord *Lutkauskas*, 2015 IL 117090, ¶ 47. The issue is one of law and thus subject to *de novo* review. *Lutkauskas*, 2015 IL 117090, ¶ 43.

¶ 22        Applying the transactional test to the question of whether the foreclosure claim shares an identity with Bhutani's conversion and replevin claims, we conclude that it does not. The bank's primary argument for an identity is that which we have already addressed and rejected, that the foreclosure judgment specifically adjudicated the same right to possession as is at issue in Bhutani's complaint. Furthermore, the foreclosure judgment decided the parties' rights as to a specific piece of real property and all its "rents, issues and profits, together with the tenements, hereditaments and appurtenances." That judgment had its basis in a particular mortgage, apparently an ordinary mortgage on real property that was used for industrial purposes. Because a mortgage "is an interest in *land*, created by a written instrument providing security *in real estate* to secure the payment of a debt" (emphases added) (*Schilling v. Stahl*, 395 Ill. App. 3d 882, 888 (2009)), a mortgage foreclosure action does not ordinarily decide the plaintiff's interest in personal property in or on the real property. Given that the bank does not in any way tie its claimed right to the equipment to the mortgage or a related transaction, it has not shown any common core of operative facts that could create an identity of the claims.

¶ 23        Collateral estoppel also does not bar either of Bhutani's claims; this is because neither claim has an issue that was litigated in the foreclosure suit.

            "The minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is *identical* with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." (Emphasis in original.) *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001).

"For collateral estoppel to apply, a decision on the issue must have been necessary for the judgment in the first litigation, and the person to be bound must have actually litigated the issue in the first suit." *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997). As we have stated, a possessory right to the equipment was not litigated in the foreclosure action.

¶ 24     We now turn to the other arguments that the bank raises in its response to Bhutani. After addressing those, we dispose of the bank's motion to dismiss the appeal as moot as to the replevin claim.

¶ 25     The bank argues that, because Bhutani could have established his right to possess the equipment in the foreclosure action, by, for instance, seeking an order specifically granting him possession of the equipment, the judgment in the foreclosure action bars this action. The bank's argument misunderstands such bars. The argument implies that every possible claim a party could raise against the other party in an action must be raised or be barred. This is not the case. It is true that Illinois courts use words that suggest a rule akin to that implied by the bank. For instance, in *Lutkauskas*, 2015 IL 117090, ¶ 44, the supreme court stated that, "[i]n addition to the matters that were actually decided in [a] first action, the bar [of *res judicata*] also applies to those matters that could have been decided in the prior suit." While this statement accurately summarizes the doctrine, its application requires courts to consider three specific elements. The supreme court subsequently set forth those elements in *Lutkauskas*, 2015 IL 117090, ¶ 44, as follows: "(1) the rendition of a final judgment on the merits by a court of competent jurisdiction; (2) the existence of an identity of cause of action; and (3) identity of the parties or their privies." Here, the doctrine does not apply, because the second element is not satisfied. Quite simply, a claim for the possession of the equipment is not the same for *res judicata* purposes as the foreclosure claim.

¶ 26     The bank makes several arguments equating Bhutani's attempts to regain possession of the equipment to an attempt to challenge his loss of possession of the property. Possession of the equipment does not require possession of the property. Indeed, as we will later discuss, the bank has filed an affidavit in this court averring that the equipment is no longer on the property. Further, an attempt to seek entry onto property does not equate to an attempt to seek possession of that property. Property law includes entire classes of persons other than possessors who may lawfully enter onto real property–notably licensees and invitees. See Black's Law Dictionary 846, 939 (8th ed. 2004) (invitee, licensee). Seeking possession of the equipment–or for that matter, seeking entry onto the property–is in no way equivalent to seeking possession of the property.

¶ 27     The bank argues that, because Bhutani's filings in the trial court used the wrong standard for the identity of claims, Bhutani forfeited his argument on appeal that *res judicata* did not bar his claims. Bhutani asked the court to apply the "same-evidence test," which the supreme court discarded in favor of the transactional test. *River Park, Inc.*, 184 Ill. 2d at 307. On these facts, we decline to find forfeiture. If the difference between the same-evidence test and the transactional test had been a genuine issue in this case, then an argument could be made that Bhutani had forfeited the issue. Typically, however, the choice of tests makes no difference. See *River Park, Inc.*, 184 Ill. 2d at 307 ("In almost all cases in which Illinois courts have discussed these two tests, the courts have found that the result of the analysis was the same, regardless of which test was applied."). Here, the complete lack of identity of the claims makes clear that the choice of test would have no effect on the outcome.

¶ 28 The bank argues that Bhutani's appeal is moot as to the replevin action because the equipment has been removed from the property. It has further filed a motion seeking partial dismissal of the appeal on the same basis. Included with the motion is an affidavit of the bank's vice president, Alexander Durek, in which Durek avers that the bank's agent for the property informed him before September 30, 2013–before Bhutani filed his complaint–that a "third party" removed the equipment from the property.

¶ 29 Initially, we fail to understand how the removal of the equipment makes moot Bhutani's attempt to regain possession of it. The argument could make sense if one assumes again that some unbreakable tie joins Bhutani's right to the equipment with his right to the property. We reject such a link for the reasons we have stated. Alternatively, the argument could make sense if the bank expects us to infer that it no longer has any control over the equipment. We do not draw that inference from the affidavit, which does not explain why the equipment was removed or who arranged for the removal.

¶ 30 We further note that, although the bank purports to seek dismissal for mootness, its argument in fact goes to the merits of Bhutani's replevin claim. Generally, a matter is moot when the course of events has removed any actual controversy. See, *e.g.*, *Baker v. Forest Preserve District of Cook County*, 2015 IL App (1st) 141157, ¶ 35. The bank's motion relates to a likely controversy between the parties: its control of the equipment. We will not wade into what appears to be a factual controversy between the parties, even if it is presented in the guise of a mootness claim. We thus deny the bank's motion.

¶ 31                                                    III. CONCLUSION
¶ 32 For the reasons stated, we reverse the dismissal of Bhutani's complaint and remand the cause.

¶ 33 Reversed and remanded.